PATRICIA HANDRAHAN, trustee, & another *vs.* MARION
MOORE & another.

Suffolk.    November 5, 1954. — February 25, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Insurance,* Life insurance:  equitable charge on proceeds, change of bene-
ficiary, policy payable to married woman. *Lien,* Equitable. *Contract,*
Respecting life insurance, Separation agreement.

A trustee for a wife under an agreement made with her husband prior to
a divorce and requiring him to provide and keep in force a certain
amount of insurance on his life in which she was to be designated as
beneficiary and which was to be collected by the trustee for her if she
should survive him had, upon his predeceasing her, as against a second
wife whom he had married after the divorce, a superior right in equity
to the proceeds of life insurance originally maintained by him for the
benefit of the former wife pursuant to the agreement, notwithstanding
that after his remarriage he had purported to make the insurance inure
to the benefit of the second wife and notwithstanding G. L. (Ter. Ed.)
c. 175, §§ 125, 126, as amended.

BILL IN EQUITY, filed in the Superior Court on January
28, 1953, by Patricia Handrahan, trustee, and Virginia
Moore.

The suit was heard by *O'Connell,* J., on demurrer and by
*Goldberg,* J., on the merits.

*Donal O'Callaghan,* for the defendant Marion Moore.

*Herman Snyder, (Richmond I. Bailen* with him,) for the
plaintiffs.

RONAN, J.    This is a bill in equity brought by Patricia
Handrahan as trustee under a tripartite agreement entered
into between herself, her mother, Virginia Moore, and her
father, Bennett Moore, to determine the ownership of the
proceeds of two insurance policies which were outstanding
upon the life of her father at the time of his death on Janu-
ary 19, 1953.    These proceeds are claimed by his second

wife, the defendant Marion Moore. She appealed from an interlocutory decree overruling her demurrer and from a final decree ordering the proceeds to be paid to the plaintiff trustee.

Virginia Moore and Bennett Moore were married in 1918, but for some time prior to March 8, 1949, they had been living apart and she contemplated filing a libel for divorce. Both were desirous of making arrangements for her support and maintenance and adopted the device of a trust agreement for that purpose. One of the provisions of that agreement required him to deliver to the trustee, one week before the trial of the libel, all his right, title, and interest in policies of insurance upon his life to the amount of $10,000 in which his wife should be designated as beneficiary, to pay all premiums during his lifetime, and to do whatever was necessary to keep the policies in full force and effect. In the event that he predeceased her, the trustee agreed to collect this life insurance and pay it over to her mother, Virginia Moore. The latter was granted a decree nisi on May 3, 1949.[1] Moore at this time was an executive officer in Liberty Mutual Insurance Company and was insured under a group insurance plan, and he delivered to the plaintiff trustee a certificate indicating coverage under said group life insurance in the amount of $10,000, but Moore severed his connection with the company and the insurance represented by this certificate terminated and was of no value.

Virginia Moore had a policy on her life for the amount of $1,000 in which he was the beneficiary. In April, 1950, he demanded that she assign the policy to him, and wrote that "in which case I will continue to leave you named as beneficiary in all my life insurance," or he would cancel one of his own life policies in the amount of $10,000 "now payable to you or — I can't decide which I will do at the moment — I will name Patty as the beneficiary instead of

---

[1] This decree was modified as of November 1, 1951, by reducing the monthly payment that he was to make to her, but in all other respects the trust agreement of March 8, 1949, remained unchanged.

you," or he would hold the policy on her life protecting the investment he made on account of the payment of the premiums and collect the policy at her death.  She assigned her interest in the policy to him accompanied by a letter from her attorney in which it was stated that the attorney assumed that Moore would continue to leave Virginia Moore named as beneficiary in all his policies in addition to the certificate of the group life insurance which had been turned over to the plaintiff trustee under the trust agreement.  Moore replied that, except in the unlikely event of his marriage, he would keep his former wife as beneficiary of all his life insurance.

The group life insurance having become valueless, the plaintiff trustee in December, 1950, requested him to substitute other valid policies.  In reply to this request, Moore wrote to his first wife enclosing a photostat of a letter from the assistant secretary of The Mutual Benefit Life Insurance Company to the vice-president of Liberty Mutual Insurance Company as evidence that he was carrying paid up life insurance in the amount of $7,027.  He also stated in his letter that she was the beneficiary in that insurance and that he was keeping up his other insurance as long as he could.[1]

The paid up insurance consisted of the two policies in question and represented the entire beneficial interest of Moore in a certain pension fund of which the defendants Woodward, Simmons, and Ford were the trustees and to whom the policies were technically payable and by them payable to the beneficiary that Moore might name.  Moore on January 14, 1947, notified these trustees that he had designated Virginia Moore as the primary beneficiary, but on July 16, 1952, he notified them that he was revoking this designation and substituting the defendant Marion Moore whom he married in 1951.  The pension trustees

[1] This other policy which had been issued by New England Mutual Life Insurance Company was later surrendered by Moore.  Only two policies issued by The Mutual Benefit Life Insurance Company amounting to $7,027 were in effect at his death.  He left no assets, and no administration was taken out on his estate.

since the entry of the final decree have paid the proceeds into court and the bill has been dismissed as to them.

The agreement between Moore and his wife through their daughter, the plaintiff, was based upon a valuable consideration. It settled the rights of Moore and his wife in their property, the extent he was to contribute to her maintenance and support, and her right to secure the payment of $10,000 from the proceeds of insurance upon his life in case he should predecease her. It is plain that he did not fully perform his undertaking by turning over to the trustee the certificate of the group insurance on his life for in the event that this insurance turned out to be worthless (as it did) he was required by the agreement to keep his life insured for the benefit of his wife in the stated amount during his lifetime. The parties obviously intended that good insurance in the said amount in which she was beneficiary was to be maintained by him. As against his wife and trustee he waived his right to change the beneficiary in these two policies outstanding at the time of his death which together amount to less than $10,000. Indeed it appears that Moore had designated his first wife as the beneficiary in these two policies in 1947. He informed her in December, 1950, that she was the beneficiary in the two policies now in question. We think the inference is plain that Moore recognized his obligation to maintain insurance for her benefit and that all parties understood that the policies in question were substituted for the certificate of the group insurance which had become worthless. We think the plaintiff acting as trustee for her mother acquired an equitable interest in the policies by virtue of the contract with her father and her right to enforce the contract and to collect the proceeds of these policies was superior to that of the defendant second wife. *Massachusetts Linotyping Corp.* v. *Fielding,* 312 Mass. 147, 149. *Thomson* v. *Thomson,* 156 Fed. (2d) 581. *Mutual Life Ins. Co.* v. *Franck,* 9 Cal. App. (2d) 528. *Mahony* v. *Crocker,* 58 Cal. App. (2d) 196. *MacDonald* v. *Conservative Life Ins. Co.* 292 Mich. 182. *Zies* v. *New York Life Ins. Co.* 237 App. Div. (N. Y.) 367.

*Locomotive Engineers Mutual Life & Accident Ins. Association* v. *Locke,* 251 App. Div. (N. Y.) 146. *Hundertmark* v. *Hundertmark,* 372 Pa. 138.

The two policies in question were in the possession of the pension trustees and under that plan the insured Moore had no authority to assign the policies, but there is nothing in the record to show that he was without authority to designate the beneficiary in each policy. Indeed the statement of agreed facts, upon which the case was submitted to the trial judge, shows that it was the duty of the pension trustees upon collection of the proceeds to pay them to the beneficiary designated by Moore. The fact that the two policies were made formally payable to Moore's second wife at the time of his death does not, by virtue of G. L. (Ter. Ed.) c. 175, § 125, § 126 as amended by St. 1943, c. 227, § 5, bar this suit to enforce the first wife's right in the proceeds. *Massachusetts Linotyping Corp.* v. *Fielding,* 312 Mass. 147, 151–153.

The interlocutory decree is affirmed. Since the entry of the final decree the proceeds of the policies have been paid into court by the pension trustees and the bill has been dismissed as to them. The final decree is modified by ordering the clerk of court to pay the proceeds to the plaintiff trustee, and as so modified is affirmed.

*So ordered.*