SHIRLEY S. HURLBUT vs. BEVERLY A. HURLBUT
(and a companion case[1]).

No. 94-P-1190.

Norfolk. November 14, 1995. - June 6, 1996.

Present: JACOBS, LAURENCE, & LENK, JJ.

*Divorce and Separation,* Separation agreement, Agreement respecting life
insurance. *Insurance,* Life insurance.

In actions brought by the former wife and the widow of a decedent seeking
a declaration of their rights to certain life insurance policies, the Probate
Court judge should have ordered specific enforcement of the provisions
of the separation agreement, incorporated in the divorce judgment but
by its terms independent, setting forth lump sum settlement and insur-
ance obligations of the husband in favor of the former wife, where there
were no countervailing equities to require a different result. [524-526]

CIVIL ACTIONS commenced in the Norfolk Division of the
Probate and Family Court Department on August 16, 1993.

The cases were heard by *Christina L. Harms,* J., on mo-
tions for summary judgment.

*W. Hugh M. Morton* for Shirley S. Hurlbut.

*Albert S. Robinson* for Beverly A. Hurlbut.

JACOBS, J. After David G. Hurlbut died, his former wife
(Shirley) and his wife at the time of his death (Beverly) each
filed complaints in the Probate and Family Court seeking a
declaration as to their rights to the proceeds of certain insur-
ance policies on his life. Judgment was entered on cross mo-
tions for summary relief declaring that Beverly is entitled to
the major portion of those proceeds. We vacate the judgment
and order the cases remanded to the Probate and Family
Court for entry of a judgment declaring that Shirley is entitled
to the proceeds of the policies in question.

The scene for the issues before us was set by the divorce, in

---

[1]Beverly A. Hurlbut vs. Shirley S. Hurlbut.

1985, of Shirley and David after almost thirty years of marriage. In the course of that proceeding, they executed a separation agreement, which was incorporated by reference in the divorce judgment but which, by its terms, retained independent legal significance. The pertinent provisions of that agreement provide:

(1) In Article I, that David was to pay to Shirley alimony of $2,500 per month and that:

> "[a]limony shall cease upon Husband's retirement from John Hancock Mutual Life Insurance Company, provided such retirement does not occur before Husband's age 60. Alimony shall, in any event, terminate when Husband reaches age 65, provided, however, that in the event Husband elects to continue employment beyond age 65, thereby affecting pension payout to the Wife anticipated under article IB hereof, the alimony shall continue until such pension is being paid to her."

(2) Shirley was to receive twenty-three percent of David's pension "accrued at the time of [David's] retirement." The agreement also expressed the parties' intention "to effect survivor benefits" for Shirley so that she would continue to receive "her share" of the pension in the event that David died after retirement.

(3) In Article IV, entitled "INSURANCE," David agreed that upon his death his estate would pay to Shirley a lump sum according to the following schedule:

> "If Husband dies between ages 51 through 60, $225,000. If husband dies between ages 61-65, $125,000[.] If husband elects not to retire before the end of his 65th year, he shall retain $125,000 in insurance until the date of such retirement."

It was further stated that "[s]uch obligation shall cease when the Husband is no longer obligated to make payments under the terms of Article I." Continuing, the insurance provision states: "To secure his obligations under this Article IV, the Husband shall maintain in effect life insurance policies with face values at least equal to the amount to which he is obligated from time to time." There follow extensive provisions requiring David to maintain certain described life insurance policies or their substitutes.

Subsequent to his divorce from Shirley, David married Beverly. In 1987, David, then fifty-three years old, elected to retire under a new early retirement program of his employer, John Hancock. When Shirley began to receive $1,176.72 per month as her share of David's retirement pension, David ceased his alimony payments. Thereafter, Shirley brought a complaint for contempt alleging that she was entitled to alimony from David in the amount of $2,500 per month in addition to the pension payments. In the course of the contempt proceeding, a judge of the Probate and Family Court (first judge) found that the unanticipated change in the John Hancock pension plan and David's early retirement constituted a countervailing equity, see *Knox* v. *Remick*, 371 Mass. 433, 436-437 (1976), justifying modification of David's alimony obligation. Accordingly, he ordered David to pay "that amount in addition to the pension benefit paid to the Wife by John Hancock, which will result in her receipt of $2,500.00 per month income from the two sources until he reaches 60 years of age when his obligation to supplement the pension payments shall cease." See *Bloksberg* v. *Bloksberg*, 7 Mass. App. Ct. 233, 234-235 (1979) ("it is settled that the court's power of modification under G. L. c. 208, § 37, may be exercised . . . in a proceeding for contempt"). At all material times, David was the owner and insured under three life insurance policies issued by John Hancock: a group policy in the face amount of $119,500 and two individual policies, each in the face amount of $15,000.[2] At about the time of the contempt proceeding, the first judge found that David, "[c]ontrary to the [divorce] judgment," had made Beverly the beneficiary of the group policy and as part of the contempt judgment, ordered him to designate Shirley as primary beneficiary of that policy. David did not comply with that order.[3]

David died in 1992, approximately nine months before at-

---

[2]Beverly, in her complaint, alleges that the individual policies then provided for proceeds of approximately $26,617 and $26,577 respectively. The separation agreement states that David was then insured in a face amount of "at least $225,000," but there is no indication in the record of policies in that amount.

[3]According to Beverly's memorandum filed in support of her motion for summary judgment, David had designated Beverly as beneficiary of the individual policies in 1984. The first judge found that "[Shirley] is entitled to a judgment directing [David] to change the designation of beneficiary of the [group and the individual] policies to list her as primary beneficiary." However, the judgment of contempt that was entered ordered a change of

taining the age of sixty. The complaints for declaratory relief ensued. A second judge of the Probate and Family Court, acting on motions for summary judgment, ordered that judgment enter declaring that Shirley "is entitled to the sum of $11,909.52 from the proceeds of [the group policy][4] and that Beverly . . . is entitled to the remainder of the proceeds under [the group policy] as well as the entire proceeds under the individual policies." So far as we can determine, the only summary judgment submissions before the second judge were the separation agreement, the contempt judgment containing the alimony modification and the findings of fact and conclusions of law of the first judge relating to the contempt action.

There is no hint in our record nor is it contended that the separation agreement of David and Shirley was other than fair and reasonable at the time of their divorce or that it was the product of fraud or coercion. See *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 234 n.5 (1987). By its terms, it was intended to "settle . . . all questions pertaining to their respective property rights, the support [of Shirley] and all other rights and obligations arising from their marital relationship." Accordingly, it "should be specifically enforced, absent countervailing equities." *O'Brien* v. *O'Brien*, 416 Mass. 477, 479 (1993), and cases cited. Shirley argues that she, therefore, is entitled to enforcement of the lump sum provisions and the benefit of the insurance policies that David was required to maintain. Beverly counters with the argument that the disposition of the insurance proceeds should be controlled by the decision of the first judge, which she claims constituted a comprehensive modification of the separation

---

beneficiary only of the group policy. We determine that this inconsistency was inadvertent and not, as argued by Beverly, reflective of an implicit conclusion by the first judge, that Shirley was not entitled to the benefit of the individual policies. Such an inference is contradicted by the express language of the first judge's decision. In any event, David did not comply with the contempt judgment. Instead, he arranged for the following beneficiary designation on the group policy: "$1,323.28 [$2,500 minus Shirley's monthly pension entitlement of $1,176.72] times the number of months after the month of my death to and including September 1993 [when David would have reached age sixty] to Shirley Hurlbut, ex-wife, if living. The balance to Beverly A. Hurlbut, wife. . . ."

[4]Although the second judge placed no explanation of her decision in the record, she apparently adopted David's formulaic approach to the group policy. See note 3, *supra*.

agreement resulting not only in the change in alimony but also in a refashioning of the lump sum obligation.[5]

Beverly's argument ignores the first judge's express conclusions that "[t]he Husband's obligation to pay the Wife a certain lump sum, and hence to maintain in effect life insurance policies payable to her with face values at least equal to this obligation, has not ceased," and that David, as the owner of and insured under the three life insurance policies, "with total face values of $149,500" was "at least *partially* able to comply with this Court's judgment" (emphasis supplied).[6] Not only did the first judge explicitly affirm the independent lump sum and insurance obligations, but nothing he did in modifying the alimony provision terminated or altered those obligations because the payment of alimony, although at a reduced level, was to continue under the judgment until David reached age sixty. Also, enforcement of the separation agreement does not provide Shirley with a windfall, as contended by Beverly. While David and Shirley could have agreed to secure David's alimony obligation by providing for a lump sum that was proportionately reduced from month to month together with similarly phased life insurance, they chose instead a less flexible formula. Enforcement of that formula gives Shirley exactly the bargain she and David struck. This result is no more of a windfall to her than would have occurred had David continued his employment and died on the day before reaching the age of sixty-one, thereby

[5]Beverly's argument focuses upon an isolated finding of the first judge that "[t]he parties agree that their intent was to ensure a continuous stream of income to the Wife, secured, while alimony was paid, by life insurance and, thereafter, by the survivorship aspects of the Pension," and an inconsistency between the judgment and the conclusory finding with respect to Shirley's right to be designated as primary beneficiary of the insurance policies. See note 3, *supra.* Beverly claims that the contempt judgment reflects an attempt by the first judge to design a remedy consistent with David's and Shirley's intent by requiring just enough insurance to cover David's alimony obligation until he reached the age of sixty.

[6]While the combination of David's early retirement and Shirley's immediate entitlement to receive pension benefits was unanticipated, Beverly's argument does not take into account that David's retirement alone, before age sixty, and without contemporaneous entitlement to pension benefits, was recognized as a possibility in Article I ("alimony shall cease upon Husband's retirement . . . provided such retirement does not occur before Husband's age 60"). In such an event, the lump sum payment provision would remain in force since David would be required to pay alimony until he reached the age of sixty-five.

entitling Shirley to a lump sum payment of $225,000 rather than the $125,000 which would be due her if David had survived until the next day.

The determinative circumstance is that, except for its term being dependent on an ongoing alimony requirement, David's lump sum and insurance obligations constitute independent and severable provisions of the separation agreement. We are unable to conclude that such important provisions implicitly were modified by the first judge while addressing conflicting interpretations of the alimony clause, which he recognized as "the essence" of the dispute before him.

Viewed independently of any conclusions drawn by him and under the established principles of *Knox* v. *Remick*, 371 Mass. at 436-437, and its progeny, the first judge's subsidiary findings do not support the judgment of the second judge, in effect modifying the lump sum and insurance provisions of the agreement. To the extent that such a modification may be based on countervailing equity grounds other than those discussed in *Knox* v. *Remick*, 371 Mass. at 437, those yet undefined grounds must present a compelling case for change. *Stansel* v. *Stansel*, 385 Mass. 510, 516 (1982). *Hayes* v. *Lichtenberg*, 422 Mass. 1005, 1006 (1996). Notwithstanding the first judge's unreviewed finding, David's early retirement and his unauthorized change of the beneficiary provisions hardly constitute such compelling circumstances.

There is no dispute that a spouse who has been removed as a beneficiary of a life insurance policy in violation of the terms of a separation agreement is entitled to recover the proceeds of that policy either from the improperly substituted beneficiary or from the insurer. See *Green* v. *Green*, 13 Mass. App. Ct. 340, 342 (1982). Accordingly, we vacate the judgment and order the cases before us to be remanded to the Probate and Family Court for the entry of a judgment declaring that Shirley is entitled to the proceeds of the policies in question.

*So ordered.*