RICHARD E. FOSTER *vs.* MICHAEL J. HURLEY & another.[1]

Middlesex. February 7, 2005. - April 28, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Divorce and Separation,* Separation agreement, Agreement respecting life insurance. *Insurance,* Life insurance: change of beneficiary. *Contract,* Insurance, Unjust enrichment. *Trust,* Constructive trust.

In a civil action involving a dispute over the effect of a marital separation agreement on the proceeds of two life insurance policies owned by the former wife, which dispute arose upon the former wife's death, the separation agreement did not preclude the former husband from pursuing equitable remedies despite the fact that the agreement specifically provided that a creditor's claim against the deceased's estate was available to him, where a contrary interpretation of the agreement would fail to effectuate the intentions of the parties most likely existent at the time the agreement was executed. [160-162]

This court concluded that a former husband was entitled to equitable substitution as the beneficiary of a certain insurance policy owned by his former wife, which policy was in existence at the time a separation agreement between them (agreement) was executed, despite the fact that the specific policy was not named in the agreement, and the fact that the former wife remarried and named her new husband as beneficiary shortly before her death, because the parties to the agreement contemplated that this particular policy, or some immediate substitute, would continue to name the former husband as beneficiary to satisfy the agreement's provision that the former wife was required to maintain $200,000 in life insurance naming the former husband as the primary beneficiary, and because the former wife failed to replace the policy with a substitute after naming her new husband as beneficiary [162-166]; however, the former husband was entitled to recover the proceeds from that policy only for the benefit of his children, where the purpose of the life insurance provision in the agreement was to provide security and support for the children [166-167].

In the absence of specific guidance in a separation agreement as to the intentions of the parties regarding insurance policies acquired after the parties' separation, and in the absence of any evidence that the former wife intended to use a certain policy to meet her obligations under the separation agreement but was dissuaded from doing so by her new husband, the former husband had no legal or equitable rights to its proceeds [167-170]. GREANEY, J., dissenting, with whom IRELAND and COWIN, JJ., joined.

[1]James G. Nelligan, special administrator of the estate of Janice M. Hurley.

CIVIL ACTION commenced in the Superior Court Department on March 26, 2001.

Motions for partial summary judgment and for judgment on the pleadings were heard by *Peter M. Lauriat,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Wendy H. Sibbison* for the defendant.

*David M. Hass* for the plaintiff.

CORDY, J. This case involves a dispute over the effect of a marital separation agreement on the proceeds of two life insurance policies owned by Janice M. Hurley (deceased), who died on August 31, 2000. After her death, the deceased's former husband, Richard E. Foster, brought an action to recover the proceeds of the policies, which had been paid out to the named beneficiary, Michael J. Hurley, who married the deceased after she and Foster had divorced. Foster claims that he is entitled to equitable substitution as the beneficiary under both policies pursuant to the terms of a separation agreement, which required the deceased to maintain $200,000 in life insurance naming Foster as the primary beneficiary. Hurley counters that he is entitled to the proceeds of both policies, one acquired by the deceased before her divorce and the other after her marriage to him, because neither policy was specifically referenced in the separation agreement. He also contends that Foster's sole remedy under the agreement is in an action against the deceased's estate, which, by statute, cannot reach the proceeds of the policies in any event. Because we interpret the separation agreement to include the life insurance policy in existence at the time the agreement was executed but not the policy acquired after the divorce, we affirm the motion judge's rulings that Foster is entitled to equitable substitution as the beneficiary of the first policy and Hurley is entitled to retain the proceeds of the later one.

1. *Background.* Foster and the deceased married in 1981. They had two children, one born in 1982, and the other in 1985. In 1995, Foster and the deceased ended their marriage and executed a separation agreement. A provision of the agreement specified:

> "[U]ntil the children are emancipated as defined in this

Agreement, the Wife shall maintain and keep in effect one or more life insurance policies on her life totaling no less than $200,000 naming the Husband as primary beneficiary. Upon request, the insured shall promptly furnish to the other proof that the policy or policies as described above remains in full force and effect. If the policy or policies are not in full force and effect at the time of a party's death, then notwithstanding anything to the contrary contained in this Agreement, the surviving party shall have a creditor's claim against the deceased's estate for the difference between the face amount of the policy or policies required to be maintained under this Agreement and the amount actually paid under the deceased's insurance policy."[2]

From 1991 until her death, the deceased owned a group life insurance policy issued by UnumProvident Corporation (Unum policy) through her employment at Children's Hospital in Boston. Foster was the policy's named beneficiary through 1999.[3] In 1998, she married Hurley and, effective January 1, 2000, named him the beneficiary of the Unum policy. In 2000, the deceased also acquired a second group life insurance policy issued by Prudential Insurance Company (Prudential policy) through other employment at the East Boston Neighborhood Health Center. Hurley was named the beneficiary on the

---

[2] A parallel provision similarly required Foster to maintain a certain amount of life insurance naming the deceased as the beneficiary. The separation agreement was incorporated in but did not merge with the final divorce decree, surviving as a contract of independent legal significance. The motion judge found that the life insurance provision at issue here survived, and the parties do not challenge that finding.

[3] Hurley alleges that the beneficiary designation was a disputed and material issue of fact and argues that the evidence supporting Foster's motion for summary judgment was inadequate. Specifically, Hurley asserts that an affidavit from the personnel director of Children's Hospital, which states that Foster was the UnumProvident Corporation policy's (Unum policy) beneficiary from 1991 to 1999, is not based on personal knowledge, because the affiant began working as personnel director only after 1995. In addition, Hurley notes that the deceased's application for 1995 benefits, which is in the record, has no beneficiary designation. We conclude that the personnel director's affidavit adequately establishes that Foster was the policy's beneficiary from 1991 to 1999, when the deceased named Hurley as beneficiary. Because Hurley has not set forth "specific facts" to the contrary, we reject his claim that summary judgment was inappropriate for this reason. *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 554 (1976).

Prudential policy. These two policies, totaling just under $200,000, were the only life insurance policies in existence when the deceased died on August 31, 2000. At the time of her death, both children were unemancipated under the terms of the separation agreement.

After her death, Hurley received the proceeds of both policies: approximately $168,000 from the Unum policy and $31,000 from the Prudential policy.[4] Seeking these proceeds, Foster filed suit against Hurley and the deceased's estate in the Superior Court.[5] A judge granted Foster a temporary restraining order, which required Hurley to pay the policies' proceeds to the administrator of the deceased's estate to be held in escrow. After the order expired, Foster's request for a preliminary injunction was denied, and the administrator returned the proceeds to Hurley. Foster then moved for partial summary judgment, and Hurley moved for judgment on the pleadings. After a hearing, the judge allowed Foster's motion in part, awarding the proceeds of the Unum policy to him as an equitably substituted beneficiary "acting for the benefit of his children." The judge also issued a declaratory judgment that Hurley was entitled to the proceeds from the Prudential policy. Both parties appealed.

The Appeals Court reversed in part, holding that Foster was entitled to the proceeds of both the Unum and Prudential policies and imposing a constructive trust on them in his favor. *Foster* v. *Hurley*, 61 Mass App. Ct. 414, 422 (2004). We granted Hurley's application for further appellate review.

2. *Availability of equitable relief.* As a threshold matter, the parties dispute whether the separation agreement provides Foster with a basis to pursue an equitable remedy to recover life insurance proceeds from Hurley. Hurley claims that the motion judge erred in not construing the separation agreement to limit Foster's remedy for the deceased's failure to obtain the required life

[4]The deceased died intestate; the value of the deceased's estate was disputed below. The administrator estimated that the estate's value was less than $10,000. Despite Hurley's argument to the contrary, the precise value of the estate was not material to the resolution of this case.

[5]On the parties' agreement, the court stayed the proceedings against the estate.

insurance to a "creditor's claim" against her estate.[6] The judge rejected this argument, finding that such an interpretation of the separation agreement would fail to effectuate the deceased's and Foster's intent.[7]

In general, "[a] separation agreement, fair and reasonable at the time of a judgment nisi, and constituting a final resolution of spousal support obligations, should be specifically enforced, absent countervailing equities." *O'Brien* v. *O'Brien,* 416 Mass. 477, 479 (1993), citing *Stansel* v. *Stansel,* 385 Mass. 510, 514-516 (1982), and *Knox* v. *Remick,* 371 Mass. 433, 436-437 (1976). The provision of the agreement governing life insurance obligations provides that the "surviving party shall have a creditor's claim against the deceased's estate for the difference between the face amount of the policy or policies required to be maintained under this Agreement and the amount actually paid under the deceased's insurance policy." Hurley argues that even though this provision does not explicitly exclude other remedies, a claim against the deceased's estate should be interpreted as the exclusive remedy because the word "shall" signifies the parties' intent that it be mandatory. We agree that the agreement makes plain that Foster has *a* remedy, in the form of a creditor's claim against the deceased's estate. We do not agree, however, that the word "shall," as used in the agreement was intended to preclude Foster from pursuing any other remedies available to him to secure the benefits promised. See, e.g., *Leonard* v. *School Comm. of Attleboro,* 349 Mass. 704, 706-707 (1965) (regardless of words "shall" and "may," remedy of tort action in statute not exclusive, given legislative intent). Contrast *Charland* v. *Muzi Motors, Inc.,* 417 Mass. 580, 584-585 (1994) (G. L. c. 151B, § 9, "procedure provided in this chapter shall . . . be

---

[6]Hurley also argues that G. L. c. 175, §§ 125 and 135, prevents Foster from reaching the life insurance proceeds, whether in a creditor's claim against the deceased's estate or, as here, in an equitable claim against him. Hurley did not make this statutory argument in the trial court, and, consequently, we do not consider it. *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 88 (1977), and cases cited.

[7]Section 2 of the separation agreement provides: "The Husband and Wife intend that this Agreement . . . shall constitute an agreement of separation between them and shall settle and govern their personal and property rights and obligations with respect to each other and the care, support, custody and education of the children."

exclusive,'' provides exclusive remedy for employment discrimination).

"[W]e must construe the [separation] agreement in a manner that 'appears to be in accord with justice and common sense and the probable intention of the parties . . . [in order to] accomplish an honest and straightforward end [and to avoid], if possible, any construction of a contract that is unreasonable or inequitable.' " *Krapf* v. *Krapf,* 439 Mass. 97, 105 (2003), quoting *Clark* v. *State St. Trust Co.,* 270 Mass. 140, 153 (1930). The separation agreement had as a preeminent objective "the care, support . . . and education of the children," and, given its expiration on the children's emancipation, the life insurance provision was clearly intended to serve that objective. Interpreting the separation agreement as limiting Foster's ability to pursue an equitable remedy for any type of breach of the life insurance provision (including changing the beneficiary on a preexisting policy) would neither further nor be consistent with that preeminent objective. We agree with the motion judge that such an interpretation would simply fail to effectuate the intentions of the parties most likely existent at the time the agreement was executed.[8]

3. *Unum policy.* We turn next to Foster's claim to the proceeds of the Unum policy. Hurley argues that Foster was not

---

[8]Hurley also asserts that whether Foster had "unclean hands" remains a disputed issue of material fact that is determinative of whether Foster can pursue equitable relief, referring to the deceased's contempt complaint against him pending at the time of her death. The complaint alleged that Foster used and failed to pay joint credit cards in violation of the separation agreement. Both the judge and Appeals Court rejected Hurley's argument on this point, relying on the analysis of the Appeals Court in *Broome* v. *Broome,* 43 Mass. App. Ct. 539, 546-547 (1997). *Foster* v. *Hurley,* 61 Mass. App. Ct. 414, 422 n.8 (2004). We agree with the *Broome* court that the filing of a contempt complaint by one party to a separation agreement does not, without more, constitute a "countervailing equity" that should prevent a court from enforcing the terms of the agreement. See *O'Brien* v. *O'Brien,* 416 Mass. 477, 479 (1993). Here, the pending complaint was stayed after the deceased's death and did not proceed. As with the deceased's past complaints against Foster involving child support, which were resolved short of a contempt finding, this pending complaint, now effectively terminated, did not result in a contempt judgment against Foster. Absent such a judgment, the mere fact of the filing of a contempt complaint by one former spouse should not bar the other from seeking enforcement of their separation agreement.

entitled to equitable substitution as the beneficiary of the Unum policy because the separation agreement did not specifically identify the Unum policy, and the deceased never waived her right to change its beneficiary. See *Gleed* v. *Noon*, 415 Mass. 498, 500 (1993). He further contends that the failure to identify the Unum policy in the agreement distinguishes this case from the many cases "in which wives or children who were removed as beneficiaries of life insurance policies in violation of the terms of separation agreements or divorce judgments have been permitted to recover the proceeds of such policies . . . from the improperly substituted beneficiaries." *Green* v. *Green*, 13 Mass. App. Ct. 340, 342 (1982).

Foster responds that the failure to identify specific policies in a separation agreement should not deny him a remedy, notwithstanding *Gleed* v. *Noon, supra,* because the specificity requirement set forth in that case applies only to temporary court orders. He further argues that, under the Appeals Court's decisions in *Hurlbut* v. *Hurlbut,* 40 Mass. App. Ct. 521 (1996), and *Green* v. *Green, supra,* and persuasive authority from other jurisdictions, an equitable remedy is appropriate to enforce the deceased's obligation to provide security for child support in the form of life insurance proceeds. As to the Unum policy, we agree with Foster that an equitable remedy is appropriate.

"[A] spouse who has been removed as a beneficiary of a life insurance policy in violation of the terms of a separation agreement is entitled to recover the proceeds of that policy either from the improperly substituted beneficiary or from the insurer." *Hurlbut* v. *Hurlbut, supra* at 526, citing *Green* v. *Green, supra* at 342. This court has held that the removed beneficiary has an "equitable interest in the [policy] by virtue of the contract," which is superior to that of the named beneficiary. *Handrahan* v. *Moore,* 332 Mass. 300, 303 (1955). See *Massachusetts Linotyping Corp.* v. *Fielding,* 312 Mass. 147, 149 (1942) ("Although by the terms of the policy [the policy holder] had the right as between himself and the insurance company to change the beneficiary, he could contract with the plaintiff not to do so and would then no longer have that right as between himself and the

plaintiff"). Other jurisdictions are in accord.[9]

Where the separation agreement designates specific policies, the court's determination of the removed beneficiary's beneficial interest will be straightforward. See *Hurlbut* v. *Hurlbut, supra* at 522 (agreement specified "certain described life insurance policies or their substitutes"); *Green* v. *Green, supra* at 340-341 (proceeds of five of seven policies named in divorce judgment). See also *Handrahan* v. *Moore, supra* at 301-302 (discussed note 13, *infra*) (agreement by husband to maintain life insurance naming former wife as beneficiary in combination with husband's assurances that two specific policies intended to satisfy obligation). In this case, however, the agreement provides only that the deceased "shall maintain and keep in effect one or more life insurance policies on her life totaling no less than $200,000.00 naming the Husband as primary beneficiary," and does not explicitly obligate her to name or maintain Foster as the beneficiary of any specific policy.

While the inartfully drafted separation agreement here leaves the court to enforce its terms without the specific guidance of named policies,[10] the circumstances present in this case lead us to accept the motion judge's conclusion that Foster has an equitable interest in the Unum policy that is enforceable against Hurley. As with other contracts, the dominant considerations in interpreting a separation agreement are the language of the agreement and the intent of the parties. *Krapf* v. *Krapf*, 439 Mass. 97, 105 (2003) ("We draw our conclusions from the entire agreement itself and from the context of its execution"). See *Larson* v. *Larson*, 37 Mass. App. Ct. 106, 109-110 (1994); *DeCristofaro* v *DeCristofaro*, 24 Mass. App. Ct. 231, 236-237

---

[9]See, e.g., *Brown* v. *Brown*, 604 So. 2d 365, 369 (Ala. 1992); *Brunnenmeyer* v. *Massachusetts Mut. Life Ins. Co.*, 66 Ill. App. 3d 315, 318 (1978); *Metropolitan Life Ins. Co.* v. *Beaty*, 242 Neb. 169, 175 (1993); *Simonds* v. *Simonds*, 45 N.Y.2d 233, 240 (1978); *Hundertmark* v. *Hundertmark*, 372 Pa. 138, 142-143 (1953); *Richards* v. *Richards*, 58 Wis. 2d 290, 298-299 (1973).

[10]Although the dissent is correct that the naming of specific policies in a separation agreement is not always feasible, *post* at 175 (Greaney, J., dissenting), the parties should nonetheless describe the subject policies in a way that leaves no doubt about their intent with respect to a given policy, such as providing a clear method for the substitution of policies in effect at the time of the agreement. For a model life insurance provision, see 2A C.P. Kindregan & M.L. Inker, Family Law and Practice § 51.64 (3d ed. 2002).

(1987). During their marriage, the deceased named Foster as beneficiary of the Unum policy. At the time the separation agreement was executed, it was the only policy she owned and had a value of approximately $100,000. The designation of Foster as beneficiary continued in effect long after the separation agreement was executed and the marriage had ended. Indeed, the value of the policy was increased after the marriage (eventually rising to $168,000), and the deceased did not change beneficiaries (even after her marriage to Hurley) until eight months before her death. Given these circumstances and the fact that the Unum policy directly satisfied a significant part of the deceased's unambiguous obligation to Foster under the agreement at the time of their divorce, it is sufficiently clear to us that the parties to the separation agreement contemplated that this particular policy, or some immediate substitute, would continue to name Foster as beneficiary. This context directs us to resolve the parties' dispute over the Unum policy with reference to the cases where improperly removed beneficiaries are held to have superior equitable rights to named beneficiaries. See *Handrahan* v. *Moore, supra* at 303; *Hurlbut* v. *Hurlbut, supra* at 526; *Green* v. *Green, supra* at 342.

*Gleed* v. *Noon*, 415 Mass. 498 (1993), does not bar Foster's recovery of the Unum policy proceeds. In the *Gleed* case, we interpreted the effect of a temporary order restraining the parties, who had recently begun divorce proceedings, from "withdrawing, transferring, conveying, assigning, spending, encumbering, pledging, bequeathing or otherwise divesting themselves of any assets in which they have acquired an interest during their marriage to each other and which are subject to division by [the Probate Court, including] [a]ny property rights in any pension, profit sharing plan, IRA or Keough plan." *Id.* at 499. While this order was in effect, the husband (who died before the divorce proceedings concluded) changed the beneficiary designations on his life insurance policy, pension plan, and individual retirement account from his wife to his daughter. Such an order, we held, did not "specifically prohibit, restrain, or prevent the decedent from changing the beneficiary on any of his policies or accounts," and thus the husband's beneficiary changes did not violate the order. *Id.* at 500. The

husband's change in beneficiary designation did not, in any sense, divest the husband of the assets in question — he retained the same interest in and control over those assets as he previously had. Consequently, we reversed the declaration that the changes were void. *Id.* at 499.

We do not read *Gleed* v. *Noon, supra,* as support for Hurley's argument. The *Gleed* case stands for the proposition that a beneficiary's legal interest in policies or plans is conditional and subject to defeasance until the insured's death, and that the order prohibiting the husband from transferring his assets did not purport to affect that interest. *Id.* at 500-501. Similarly, Foster's legal interest in the Unum policy ended when the deceased named Hurley as its beneficiary. However, Foster's equitable interest in the Unum policy arises, not from his initial designation as its beneficiary, but from the independent command of the separation agreement, the circumstances of the agreement's execution, and the deceased's later failure to replace the policy with a substitute after naming Hurley as its beneficiary. Moreover, *Gleed* v. *Noon, supra,* concerned the interpretation of a temporary restraining order, which we read far more narrowly than a separation agreement, resolving all ambiguity in favor of the alleged violator. Compare *Nickerson* v. *Dowd,* 342 Mass. 462, 464 (1961) (finding of violation requires "clear and unequivocal command and an equally clear and undoubted disobedience") with *Krapf* v. *Krapf,* 439 Mass. 97, 105 (2003) (interpretation of separation agreement). The *Gleed* case does not require us to reject Foster's claim to the Unum policy.[11]

Having concluded that Foster was properly substituted as the

---

[11]Although we do not consider Hurley's argument that G. L. c. 175, §§ 125 and 135, requires a judgment in his favor, see note 6, *supra,* we note that the policies underlying those statutes are not inconsistent with our conclusion regarding the Unum policy.

Both of these statutory provisions serve to limit the rights of creditors to life insurance proceeds and to protect insureds' choice of beneficiaries. *Ponlain* v. *Sullivan,* 308 Mass. 58, 60 (1941). However, these protections do not shield Hurley from Foster's claim to the Unum policy where Foster's equitable claim to the policy proceeds under the separation agreement arose long before the deceased named Hurley the policy's beneficiary. See *Handrahan* v. *Moore,* 332 Mass. 300, 304 (1955), citing *Massachusetts Linotyping Corp.* v. *Fielding,* 312 Mass. 147, 151-153 (1942).

beneficiary of the Unum policy and was entitled to recover the proceeds of that policy from Hurley, the motion judge imposed the requirement that Foster receive the Unum policy proceeds "acting for the benefit of his children." Foster now claims that this limitation is unnecessary. We disagree. It is uncontested that the purpose of the life insurance provision was to provide security and support for the children. Foster has indeed contended throughout this litigation that that is precisely what the parties intended. In these circumstances, it was appropriate for the judge to conclude that Foster's receipt of the proceeds of the Unum policy would be "for the benefit of the children." We therefore affirm the judgment, including this limitation on the use of the judgment proceeds.

4. *Prudential policy.* The judge rejected Foster's claim to the proceeds of the Prudential policy, ruling that the reasoning of *Green* v. *Green*, *supra*, entitling Foster to the Unum policy, did not apply to life insurance policies acquired by the deceased after the divorce. The Appeals Court found no meaningful distinction between the Unum and Prudential policies, concluding that Hurley had been unjustly enriched by both. *Foster* v. *Hurley*, 61 Mass. App. Ct. 414, 421-422 (2004) (imposing constructive trust on both policies for benefit of Foster). On appeal from the judge's grant of Hurley's motion on the pleadings, Foster asserts that the Appeals Court was correct that he has as much of an equitable right to the proceeds of the Prudential policy as to the proceeds of the Unum policy. We take a narrower view of Foster's equitable rights.

"Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched." *Fortin* v. *Roman Catholic Bishop of Worcester*, 416 Mass. 781, 789, cert. denied, 511 U.S. 1142 (1994), citing *Nessralla* v. *Peck*, 403 Mass. 757, 762-763 (1989). See *Barry* v. *Covich*, 332 Mass. 338, 342 (1955) ("constructive trust may be said to be a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where

the legal title to the property was obtained by fraud or in viola-
tion of a fiduciary relation or where information confidentially
given or acquired was used to the advantage of the recipient at
the expense of the one who disclosed the information"). The
Appeals Court took the view that Hurley's receipt of the
Prudential policy constituted unjust enrichment, notwithstanding
the absence of any wrongdoing or knowledge on his part of the
deceased's contractual obligations under the separation
agreement. *Foster* v. *Hurley, supra* at 421. We disagree.

In this case, there was neither a fiduciary relationship between
Hurley and Foster nor any evidence of fraud on the part of Hur-
ley in his receipt of the proceeds of the Prudential policy. See,
e.g., *Christian* v. *Mooney*, 400 Mass. 753, 763-764 (1987), cert.
denied sub nom. *Christian* v. *Bewkes*, 484 U.S. 1053 (1988)
(plaintiffs not entitled to constructive trust where defendant had
no knowledge of wrongdoing); *Carpenter* v. *Suffolk Franklin
Sav. Bank*, 370 Mass. 314, 327 (1976) (although "enrichment of
the bank may have been unjust in some sense," constructive
trust inappropriate where no fiduciary relationship and no fraud).
Nor can the deceased's specific act of naming Hurley the
beneficiary of the Prudential policy stand in as the "wrongful
conduct" where the agreement does not prohibit, bar, or limit
the deceased from doing so. Cf. *Torchia* v. *Torchia*, 346 Pa.
Super. 229, 233-238 (1985); *Richards* v. *Richards*, 58 Wis. 2d
290, 298-299 (1973) (constructive trusts appropriate for
removed beneficiaries of life insurance policies where deceased
spouses violated obligations in divorce decree or agreement as
to specific policies).

In the absence of specific guidance in the separation agreement
as to the intentions of the parties regarding after-acquired poli-
cies,[12] and in the absence of any evidence that the deceased

---

[12]Compare *Parge* v. *Parge*, 159 Wis. 2d 175, 180 (Ct. App. 1990) (obliga-
tion "to 'maintain' insurance gave rise to no right to a constructive trust over
subsequently acquired insurance"), with *Simonds* v. *Simonds*, 45 N.Y.2d 233,
239 (1978) ("persistence of the promisee's equitable interest is all the more
evident where the agreement expressly provides for a change in policies, and
in effect provides further that the promisee's right shall attach to the new
policies").

intended to use the Prudential policy to meet her obligations under the separation agreement but was dissuaded from doing so by Hurley, Foster has no legal or equitable rights to its proceeds.[13] Although the deceased was in breach of her obligation to name Foster as beneficiary of policies totaling $200,000 at the time she purchased the Prudential policy, that breach has no bearing on her right to purchase a life insurance policy naming her new husband as beneficiary or to confer on him any other gift or benefit (regardless of consideration) not specifically barred by a provision in the separation agreement.[14]

Although the motion judge included this requirement in his "Memorandum and Order," the form final judgment of the Superior Court, as prepared by the clerk, does not reflect this limitation. Hurley argues that we should order the modification of the judgment to include the requirement that any proceeds awarded to Foster be held in trust for the benefit of the children. As this omission from the form of the judgment appears to have been a clerical error and we conclude that the limitation was appropriate, we agree that the form of the judgment should be

---

[13]The dissent argues that *Handrahan* v. *Moore*, 332 Mass. 300 (1955), supports such a broader equitable right to after-acquired policies. *Post* at 172-174 (Greaney, J., dissenting). We disagree. The dissent's reading of the case is highly selective. Its holding rests squarely on the court's determination of the parties' intent. See *Handrahan* v. *Moore*, *supra* at 303 ("We think the inference is plain that . . . all parties understood that the policies in question were substituted for the [policy in effect at the time of the agreement]"). In the *Handrahan* case, the decedent assured the plaintiff trustee and his first wife that two substitute policies acquired after the execution of the trust agreement (substituted for worthless insurance certificates delivered to the plaintiff trustee) named his first wife as beneficiary. *Id.* at 302, 303. The plaintiff trustee thus obtained an equitable interest in the specific substitute policies. *Id.* at 303. In this case, the parties to the separation agreement did not exchange assurances or have any communication at all about the Prudential policy. The Prudential policy does not qualify as such a mutually understood substitute for a policy in effect at the time of the relevant agreement. To the extent other jurisdictions have recognized a broader equitable right to the proceeds of after-acquired insurance policies, we find their reasoning unpersuasive. See, e.g., *Equitable Life Assur. Soc'y* v. *Flaherty*, 568 F. Supp. 610, 616 (S.D. Ala. 1983); *Pernick* v. *Brandt*, 201 Mich. App. 293, 298 (1993); *Holt* v. *Holt*, 995 S.W.2d 68, 77-78 (Tenn. 1999).

[14]This result is also consistent with the Commonwealth's public policy, which favors the protection of named beneficiaries of life insurance policies, see G. L. c. 175, §§ 125 and 135.

modified to include the limitation.[15] The judgment is affirmed as modified.

6. *Conclusion.* The judgments of the Superior Court, as modified, are affirmed.

*So ordered.*

GREANEY, J. (dissenting in part, with whom Ireland and Cowin, JJ., join). This case is about a deceased mother (Janice M. Hurley) who violated her written promise in a separation agreement and a subsequent court decree (as the promise was incorporated into the divorce decree and became part of the final judgment) to provide support for her children in the event of her death, and what we should do about it. At issue are life insurance proceeds left to the deceased's late husband, the defendant. The ownership of the proceeds of the Unum policy is correctly decided by the court (as it was by the trial judge) — the proceeds are to be held by the plaintiff, the deceased's former husband, in trust for the benefit of the children. I disagree, however, with the court's decision to give the proceeds of the Prudential policy to the defendant. I would order these proceeds to be held by the plaintiff in trust for the benefit of the children.

I begin by emphasizing, as the court acknowledges, *ante* at 162, that the disputed provision in the separation agreement pertaining to life insurance obligations, section 12, was meant to secure support for the children, and not for the surviving spouse. Under section 12, the life insurance obligations apply for a fixed duration: "until the children are emancipated as defined in this Agreement." Emancipation of the children would be irrelevant if the obligation was for the benefit of the surviving spouse. Further, section 12 must be read together with the remaining provisions of the separation agreement. In addition to the language appearing in section 2 of the separation agreement, see *ante* at 161 n.7, that section also makes clear that one of the main purposes behind the agreement is to determine "the support and maintenance of the children."

---

[15]The form of the final judgment, as modified, would add the phrase, "said recovery to be held in trust for the benefit of the children of Richard E. Foster and Janice M. Hunter."

It is also fairly obvious from the provision and the facts existing when the separation agreement was signed, that the parties contemplated an increase in the deceased's life insurance coverage to the level of $200,000. At the time, the existing Unum policy had a value of approximately $100,000. To meet her commitment under the separation agreement, the deceased either had to increase the value of the Unum policy to $200,000[1] or purchase an additional policy or policies on her own to reach the agreed-on level. Thus, when the deceased later obtained the Prudential policy, she knew (or can be deemed to have known) that she was obtaining insurance that should have been dedicated to compliance with the provision (at least to the extent she satisfied her obligation to provide coverage to the plaintiff in the amount of $200,000). The deceased's failure to satisfy the agreed-on level of $200,000, naming the defendant as the beneficiary on the Prudential policy was a violation of the separation agreement and one that invested the plaintiff with equitable rights of enforcement to obtain the proceeds of the policy for the benefit of the children.

There is, therefore, considerable wrongdoing on the part of the deceased and strong equities favoring the plaintiff and the children. The Appeals Court was correct in holding for the plaintiff as to the Prudential policy. See *Foster* v. *Hurley*, 61 Mass. App. Ct. 414, 421-422 (2004). In balancing the equities, the Appeals Court recognized that, while the defendant person-ally may not have acted improperly, in retaining the proceeds of the Prudential policy he would be receiving a gratuitous benefit and would be unjustly enriched. *Id.* at 421. While the defendant claimed that he "may not be able" to keep and maintain the home that he and the deceased had purchased together without the life insurance proceeds, the countervailing equities in this case are stronger. Parents have long had a duty to support their children, see *Commonwealth* v. *Brasher*, 359 Mass. 550, 556 (1971); G. L. c. 209C, and dependent children should be maintained from the resources of their parents, and not by the taxpayers, see *T.F.* v. *B.L.*, 442 Mass. 522, 536 (2004) (Greaney,

---

[1]Under the Unum policy, the deceased could have obtained $200,000 of life insurance coverage by electing for coverage in the amount of four times her salary.

J., concurring in part and dissenting in part), and cases cited. Further, the deceased violated not only a contractual obligation, but also a court decree.[2] Other courts have drawn similar conclusions as acknowledged by the court. See *Travelers Ins. Co. v. Johnson*, 579 F. Supp. 1457, 1463 (D.N.J. 1984); *Equitable Life Assur. Soc'y v. Flaherty*, 568 F. Supp. 610, 616 (S.D. Ala. 1983) (applying Florida law); *Pernick v. Brandt*, 201 Mich. App. 293, 297 (1993); *McKissick v. McKissick*, 93 Nev. 139, 144-145 (1977); *Rogers v. Rogers*, 63 N.Y.2d 582, 584 (1984); *Holt v. Holt*, 995 S.W.2d 68, 77-78 (Tenn. 1999).

As for the possible argument that the plaintiff should not be able to take assets given as a "gift" by the deceased to the defendant, this may be said: If she had given the defendant anything but the "encumbered" proceeds of an insurance policy — say an automobile, stock certificates, cash, or even proceeds of an insurance policy to the extent the amount of proceeds exceeded the $200,000 obligation in the separation agreement — equitable substitution would be unavailable. But, by choosing the precise form of asset covered by the separation agreement — insurance policy proceeds — when the deceased had not first satisfied her life insurance obligation under the separation agreement, her intent to avoid the obligation coupled with the specific asset selected combine to bring the policy within the well-established authority of a court acting in equity to protect children from the connivances of a divorced parent. "An old legal maxim is applicable here: You must be just before you are generous." *Bentley v. New York Life Ins. Co.*, 488 N.W.2d 77, 81 (S.D. 1992) (Henderson, J., dissenting) (would conclude, in dispute over life insurance proceeds in face of life insurance obligation in divorce stipulation, that "[b]efore father was generous to his girlfriend, he should have been just with his children").

Also disturbing is the fact that, in reaching its conclusion as to the Prudential policy, the court misconstrues *Handrahan v. Moore*, 332 Mass. 300 (1955) (curiously cited by the court

---

[2]The court's decision invites further noncompliance with separation agreements and court decrees. Where a party may be held in contempt if her noncompliance is discovered while she is alive, if she dies, her mischief may be accomplished.

abundantly in upholding the decision on the Unum policy, see *ante* at 163-165), and silently overrules *Handrahan's* application to the Prudential policy. *Handrahan* is virtually dispositive.

The *Handrahan* case involved a dispute over "the ownership of the proceeds of two insurance policies" insuring the life of Bennett Moore. *Id.* at 300. Both Moore's daughter (Patricia Handrahan, the plaintiff trustee acting for the benefit of Moore's first wife who was Handrahan's mother), and his second wife, claimed entitlement to the proceeds. *Id.* at 300-301. In connection with Moore's divorce from his first wife, he executed a trust agreement under which he was required "to deliver to the trustee . . . all his right, title, and interest *in policies of insurance upon his life* to the amount of $10,000 in which his wife should be designated as beneficiary, to pay all premiums during his lifetime, and to do whatever was necessary to keep the policies in full force and effect" (emphasis added). *Id.* at 301. (As can be seen by the emphasized language, no specific policy was ever identified.) In the event that Moore predeceased his first wife, "the trustee agreed to collect this life insurance and pay it over to her mother." *Id.*

At the time he executed the trust agreement, Moore was covered by a group life insurance policy offered by his employer, and was immediately able to satisfy his life insurance obligation in the trust agreement. *Id.* However, Moore's employment situation changed leaving him uninsured by that policy. *Id.* Moore *later* obtained coverage, under the two policies in dispute, for a total of $7,027, with a different insurer, and after remarrying, replaced his former wife's name with name of his second wife as the sole beneficiary. *Id.* at 302 & n.1. What is significant is that these two policies were not policies specified in the trust agreement (nor was the first policy obtained through Moore's employer specified in the trust agreement). Although Moore's second wife claimed entitlement to the proceeds of the two policies as the named beneficiary, we found, relying on the life insurance provision in the trust agreement, that Moore had "waived his right to change the beneficiary in these two policies outstanding at the time of his death," and that the plaintiff trustee "acquired an equitable interest in the policies by virtue of the [trust agreement]." *Id.* at 303. We concluded that Moore

had not complied with the trust agreement "to keep his life insured for the benefit of his wife in the stated amount during his lifetime." *Id.* at 303. Thus, the *Handrahan* case is direct support for permitting equitable substitution as to later-acquired policies, here, the Prudential policy.

The distinction the court attempts to draw in the *Handrahan* case is one without difference, and is premised on a selective reading of the facts. While the after-acquired policies in that case were intended to *substitute* for the prior group life insurance coverage that had become valueless, the prior group life insurance policy was not a policy specified in the trust agreement. *Id.* at 301, 303 (again, no policy was specified in trust agreement). While Moore had communicated to his first wife that he would maintain her as the beneficiary of his life insurance policies, he also communicated that such was his intent only if he did not remarry. *Id.* at 301-302. It was after his marriage to his second wife that Moore revoked the designation of his first wife as beneficiary of his then existing life insurance policies, and substituted his second wife as the beneficiary of those policies. *Id.* at 302. Thus, it cannot be said on the full presentment of the facts in the *Handrahan* case that there was a mutual understanding concerning who would be named the beneficiary of Moore's later-acquired policies in the event that Moore remarried. What is significant is that we concluded that "the inference is plain that Moore recognized his obligation to maintain insurance for [his first wife's] benefit." *Id.* at 303.

While there were no subsequent communications in this case between the deceased and the plaintiff, the deceased, as has been stated, never satisfied her initial insurance obligation in the separation agreement. Communications or not, this deficiency was apparent and thus it can be inferred that the later-acquired policy (the Prudential policy) should have been used to satisfy that obligation, to *supplement* the initial deficiency, especially where the obligation, unlike that in the *Handrahan* case, was intended for child support and was a court order. Under the court's reading of the *Handrahan* case, if the Unum policy for some reason had lapsed (say, if the deceased had left her employ with the employer that offered the Unum policy), then the plaintiff may have an equitable claim as

to the Prudential policy because it would then transfer into a "substituted" policy. The court's interpretation permits an unjust result. Further, under the court's interpretation, a former spouse who recognizes his obligation but chooses to ignore it is not successful in evading the obligation, but a former spouse who arguably does not recognize the obligation, is able to evade the obligation.

One final observation is in order. The court references, *ante* at 164 n.10, a "model life insurance provision" in a particular text intended for practitioners. See 2A C.P. Kindregan & M.L. Inker, Family Law and Practice § 51.64 (3d ed. 2002). Certainly, this provision may be useful depending on the circumstances. However, where one breaches the obligation in the cited provision, the remedy therein is a claim against the estate. *Id.* As occurred here, the assets of the decedent's estate may be insufficient to satisfy the obligation, thus underscoring the need for an equitable remedy. Indeed, the estate may be insolvent.

The obligation to provide life insurance coverage in a separation agreement raises many complex issues that cannot easily be resolved by a standard provision. There are many options for divorcing spouses to consider. For example, where group life insurance often limits coverage and will terminate on the end of the insured's employment, individual policies do not have these same restrictions and are often assignable, which can protect against future changes of beneficiary. Of course, such an option may not be cost feasible, or may be undesirable for other reasons. What can be said is that the issue requires careful consideration and this court should not endorse any form provision for universal use. In the meantime, the plaintiff is entitled to the proceeds of the Prudential policy so that innocent children may be protected. I, therefore, respectfully dissent.