# United States Court of Appeals
## For the First Circuit

No. 05-2437

PETER R. CLIFFORD,

Plaintiff, Appellant,

v.

JOANNE B. BARNHART, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, U.S. District Judge]

Before

Torruella, Lynch and Howard,
Circuit Judges.

James G. Noucas, Jr., with whom Noucas Law Office was on brief, for appellant.
Evan J. Roth, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, were on brief, for appellee.

June 9, 2006

**TORRUELLA**, <u>Circuit Judge</u>.  This is an appeal from a grant of summary judgment in favor of Joanne B. Barnhart, Commissioner of the Social Security Administration ("SSA"), and against Peter R. Clifford ("Clifford") on his employment discrimination claims. Clifford contests the district court's determination that he failed to generate a triable issue that SSA's decision not to hire him for certain positions was motivated by discriminatory animus.  After careful consideration, we affirm.

## I.  Background

From July 1974 to December 1995, Clifford worked for SSA as a Social Insurance Representative, a Quality Review Specialist, a Supervisory Quality Review Specialist, a Manager of Quality Assurance, and a Field Representative.  In December 1995, however, Clifford left SSA on disability retirement due to a neurological disease that limited his ability to perform repetitive hand functions, such as computer keyboarding.

Despite his retirement, in 1999 and 2000, Clifford applied for three positions within SSA -- Metropolitan Public Affairs Specialist ("MPAS"), Management Support Specialist ("MSS"), and Social Insurance Specialist ("SIS").  However, he was not selected for any of these positions.  Believing that his non-selection was due to either age or disability discrimination, Clifford filed a number of administrative Equal Employment Opportunity ("EEO") claims with SSA.  These claims were denied.

On November 10, 2003, Clifford filed a complaint in the United States District Court for the District of Maine, alleging discrimination based on age and disability pursuant to the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621-634, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796.[1] Specifically, Clifford alleged that those who were selected for the three jobs he desired were substantially younger than him and not disabled. Clifford alleged that SSA's selecting officials made their decisions because the selectees had "current" [i.e., up-to-date] knowledge or experience. However, according to Clifford, current knowledge or experience was not included as a condition or criterion in the vacancy announcements for the positions. Clifford alleged that the only reason he lacked current knowledge and experience was his disability retirement from SSA in December 1995. However, given his long history of SSA employment, Clifford asserted that the agency could have provided him with training to "accommodate" his lack of current knowledge and experience. On that basis, Clifford claimed that his non-selection amounted to age and disability discrimination.

On January 15, 2004, SSA filed an answer that denied Clifford's discrimination allegations. The same day, the agency

---

[1] As an applicant for federal employment, Clifford was entitled to protection from discrimination based on his disability under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796. Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 11 n.1 (1st Cir. 2004).

filed a motion for summary judgment based on the affidavits generated in the EEO administrative process from the two officials at SSA who were responsible for hiring employees for the positions Clifford desired, Patricia Biggers ("Biggers") and Lawrence DuBois ("DuBois") (collectively "selecting officials").[2] The EEO affidavits detailed the selection process for the three positions for which Clifford applied. DuBois and Biggers discussed the factors they were looking for in selecting people for the positions -- for example, an awareness of current programs and policies, previous service, technical qualifications, the neatness and accuracy of application packages, and reasons for applying for the job. They also discussed the number of applicants and the selection process as a whole.

On February 5, 2004, Clifford opposed SSA's motion for summary judgment on the grounds that discovery was necessary to determine whether SSA's decisions were motivated by discriminatory animus. Pursuant to Fed. R. Civ. P. 56(f), Clifford's attorney proffered an affidavit that discovery was needed regarding (1) whether SSA procedures, policies, and programs changed dramatically between the time Clifford left SSA and applied for the three positions; (2) what, if any, training Clifford would need to assume any of the positions; and (3) the credibility of the selecting

---

[2] Biggers was the selecting official for the SIS position, and DuBois was the selecting official for both the MPAS and MSS positions.

-4-

officials. Clifford also included excerpts from the EEO Investigative Report, including an unsworn letter from current SSA employee Norman Linden ("Linden") regarding his view that SSA should have hired Clifford.

On August 13, 2004, the district court entered an order denying SSA's motion for summary judgment without prejudice to its being refiled after discovery. The court concluded that Clifford's affidavit satisfied the requirements of Fed. R. Civ. P. 56(f) and that the court would be acting "too hastily" if it were to rule on summary judgment without the benefit of discovery.

Both parties thereupon continued with discovery, during which a number of additional depositions were taken (including those of Clifford, Biggers, DuBois, and Linden). In these depositions, three important facts relevant to this appeal were revealed. First, with limited exception, SSA had a practice of using internal merit promotions to fill higher level positions. Second, selecting officials were supposed to choose a candidate from the so-called "best qualified" list, made up by human resources specialists using a scoring system. Scores, however, were not provided to the selecting officials and were not used to make hiring decisions. Third, selecting officials valued current knowledge and experience in potential employees, because "things are changing regularly [at SSA]." During the course of these

additional depositions, Clifford abandoned his age discrimination claim.

On March 24, 2005, after the close of discovery, SSA again moved for summary judgment, based on the same EEO affidavits from DuBois and Biggers that formed the basis of its 2004 summary judgment motion. SSA explained in its 2005 motion:

> The Complaint asserts discrimination (Complaint ¶ 23). In this case, however, the Social Security Administration has proffered legitimate, non-discriminatory reasons for Clifford's non-selection in each of the three positions at issue. With respect to all three positions, the Social Security Administration was seeking to hire someone with current experience who could begin the job immediately without the need for training or preparation. Those criteria were important because the Social Security Administration's systems and procedures had changed significantly since the time Clifford was last employed in 1995. The selecting officials exercised their judgment and decided that the other applicants were superior to Clifford.

On April 28, 2005, Clifford opposed this summary judgment motion with three primary arguments. First, he argued -- for the first time -- that SSA was liable for "disparate impact" discrimination on the grounds that SSA relied on a facially neutral employment practice that resulted in a disproportionately negative impact on a protected group. According to Clifford, "[b]ecause the SSA virtually always fills such higher grade positions through internal promotion, it systematically excludes qualified non-current employees, such as the plaintiff, from employment

-6-

opportunities for which [they are] qualified." Second, Clifford argued -- also for the first time -- that SSA was liable for making "prohibited inquiries and disclosures" regarding his disability, contrary to 42 U.S.C. § 12112(d). Although Clifford had affirmatively applied for the SSA positions under the permissive hiring authority for disabled individuals known as "Schedule A," he nevertheless argued that SSA violated § 12112 by informing the selecting officials that he was eligible for hire under Schedule A. Third, Clifford argued that SSA's selecting officials improperly relied on his lack of "current" SSA experience and ignored the fact that he received high scores in the pre-qualifying round that was used to generate the "best qualified" list.

On May 16, 2005, SSA replied to each argument. First, SSA argued that Clifford's new "disparate impact" allegation was procedurally barred because Clifford failed to assert it at the EEO level, in his federal court complaint, or in response to SSA's 2004 motion for summary judgment. Second, SSA argued that Clifford's new statutory claim was not only procedurally barred, but that it misconstrued the meaning of 42 U.S.C. § 12112(d)(2)(B), which actually <u>authorizes</u> federal agencies such as SSA to inform selecting officials that a candidate is eligible for hire under Schedule A. Third, SSA pointed out that Clifford had still failed to offer any evidence of discriminatory animus on account of disability.

On June 28, 2005, the magistrate judge to whom the case had been referred issued a decision recommending summary judgment in favor of SSA because (1) Clifford failed to exhaust his administrative remedies or otherwise give notice of any "disparate impact" claim; (2) Clifford likewise failed to properly raise any § 12112(d) claim, but even if he had, there was no evidence to support a violation; and (3) SSA's hiring decisions were based on legitimate non-discriminatory reasons about which Clifford failed to generate a triable issue of discriminatory animus (i.e., Clifford failed to show that he was the victim of disparate treatment).

On August 9, 2005, the district court affirmed the magistrate judge's recommended decision and granted SSA's motion for summary judgment. On August 10, 2005, the district court entered final judgment in favor of SSA.

In this appeal, Clifford is not contesting the district court's rejection of his claims of disability discrimination based on disparate impact or prohibited inquiries and disclosures. Clifford limits his appeal to his claim of disability discrimination based on disparate treatment.

## II. Discussion

### A.

This Court reviews the decision of the district court to grant summary judgment de novo. Vélez-Rivera v. Agosto-Alicea, 437

F.3d 145, 150 (1st Cir. 2006). Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A factual issue is genuine if it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make a choice between the parties' differing versions of the truth at trial. Material facts are those that possess the capacity to sway the outcome of the litigation under the applicable law." DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (internal citations and quotation marks omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether that burden is met, a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal quotation marks omitted); see also Fed. R. Civ. P. 56(e). "[A]s to any essential factual

-9-

element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal quotation marks omitted).

**B.**

In a recent case, Quiñones v. Buick, 436 F.3d 284 (1st Cir. 2006), we discussed the framework applicable to this case:

> [E]mployment discrimination cases alleging disparate treatment ordinarily proceed under the three-step, burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), and further explained in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981), St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993), and Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000).  First, the plaintiff must make out a prima facie case of discrimination.  The burden then shifts to the defendant to present a legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against the employee, for the employment decision.  Finally, the burden is placed on the plaintiff to demonstrate that the non-discriminatory reason is mere pretext and that the real reason was discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. 1817; see also St. Mary's Honor Ctr., 509 U.S. at 510-11, 515-16, 113 S. Ct. 2742.

Quiñones, 436 F.3d at 289.

In this case, SSA's motion for summary judgment did not specifically challenge Clifford's ability to establish the elements

-10-

of a prima facie case of discrimination regarding his non-selection.  Those elements are (1) that Clifford is a member of a protected class; (2) that Clifford applied for an open position with SSA; (3) that Clifford was not selected; and (4) that the employer hired another individual with similar qualifications.  See Gu v. Boston Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002).  SSA's motion argued instead that its hiring decisions were based on legitimate, non-discriminatory reasons.  With this argument, any presumption of discrimination was dispelled, and the burden was on Clifford to generate a material issue that disability discrimination was a determinative factor in the hiring decisions. The district court, however, found that Clifford failed to generate a triable issue that his non-selection was motivated by discriminatory animus.  As a result, it granted summary judgment in favor of SSA.  In this appeal, Clifford contests this decision by the district court, contending that he did in fact generate a genuine issue of material fact that disability discrimination was a determinative factor in SSA's hiring decisions.  He offers before us six separate arguments as to how he satisfied his burden.  We address each in turn.

## 1.  The use of an illegitimate rationale

Clifford's first argument relates to one of the reasons proferred by SSA for his non-selection -- namely, the fact that he did not have "current" knowledge or experience.  He contends that

SSA's use of such a reason is illegitimate. He states that current knowledge and experience were not necessary for performing the jobs at issue, and it is unlawful for a federal agency to use standards or criteria which are not job-related and consistent with business necessity and which have the effect of discriminating on the basis of disability. See 29 C.F.R. § 1630.7. That current knowledge and experience were not job-related and consistent with business necessity is evident from the fact that such criteria were not included in SSA's vacancy announcements.

We reject this argument. We think that the requirements of current knowledge and experience were included in the vacancy announcements, albeit implicitly. Each vacancy announcement expressly limited the "Area of Consideration" to "SSA employees Regionwide" and those already "serving under Schedule A," which by definition limited consideration to current employees. Such employees, simply by virtue of their current positions at SSA, had the required current knowledge and experience. Thus, there was no need to explicitly list "current knowledge and experience" in the vacancy announcements. By limiting the open positions to current employees, SSA in effect made "current knowledge and experience" requirements for the jobs. It was entirely proper then for Biggers and DuBois, the two selecting officials for the positions Clifford desired, to consider whether Clifford did in fact possess the necessary current knowledge and experience.

-12-

Even if current knowledge or experience were not included in the vacancy announcements, SSA's selecting officials were not bound to make hiring decisions based on the criteria and qualifications set forth in those announcements. The selecting officials were permitted to take into account other factors that they thought would be relevant to the advertised positions. Indeed, we think it would be nonsensical to conceive of the vacancy announcements as an exhaustive list of each and every factor that the selecting officials would take into consideration. If the selecting officials were presented with two applicants who both met all of the listed criteria for a given position, the selecting officials would still have to make a decision in the end by relying on other, unspecified criteria. That selecting officials rely on such unspecified criteria does not mean that they are discriminating against the applicant who ultimately proves unsuccessful. Thus, in this case, Biggers and DuBois would have been entirely within their rights had they evaluated applicants' current knowledge and experience despite the absence of such requirements in the vacancy announcements.

Moreover, the consideration of applicants' current knowledge and experience was not something that Biggers and DuBois snatched out of thin air. Such criteria were clearly job-related and consistent with business necessity. Both Biggers and DuBois noted that Social Security programs change often. As a result,

they wanted to ensure that the applicants they selected were aware of <u>current</u> programs, policies, systems, and services, and not programs, policies, systems, and services that had been in effect in years past. They also wanted to make sure that the selectees had current knowledge and experience because no training programs would be provided, and little preparation time would be provided to the selectees to help them become accustomed to their new positions.

This is not a case in which, for example, SSA told Clifford that he was not hired because he did not wear a purple sweater to the interview. Such a proffered reason by SSA could certainly be seen as pretext masking discrimination, as such a requirement would have no obvious connection to Clifford's ability to do his job or to SSA's ability to function as an effective organization. Clifford's current knowledge and experience, by contrast, are clearly relevant to his ability to work in the positions he desired, and we do not see how the use of such factors in determining Clifford's non-selection constitutes an attempt by SSA to disguise discrimination.

## 2. Scope of Clifford's current knowledge and experience

Clifford's second argument is related to his first. He contends that if current knowledge and experience were indeed requirements for the positions he sought, the knowledge and experience that he possessed were more than sufficient. To

-14-

demonstrate that he did possess the necessary current knowledge and experience, Clifford points to his high scores in the scheme utilized by human resource specialists at SSA to numerically rank applicants for a place on SSA's "best qualified" list.

We, however, think that these scores are of limited utility. The scores were compiled by human resources specialists solely to compile the "best qualified" list and were based solely on the representations contained in each applicant's application papers.

In MacDonald v. Cohen, 233 F.3d 648 (1st Cir. 2000), we held that "[t]here is nothing suspicious about a selecting official deciding that although [a plaintiff] was qualified at the screening stage, a close look at his qualifications at the selection stage did not justify his promotion." Id. at 652. DuBois himself noted that his own closer look at Clifford's qualifications, going beyond the numbers (to which, in any event, he was not privy), was a decisive factor in his decision to bypass Clifford in the selection process. He explained:

> I believed that Mr. Clifford lacked the current knowledge and experience needed. I do not recall if it was on his application or not, but I was aware that Mr. Clifford has been representing SSA claimants at hearings. However, this is an activity with limited scope and does not entail knowledge of the full range of day-to-day operations in SSA field offices. The MPAS position requires knowledge of the disability, retirement and Supplemental Security Income Programs; our service delivery methodologies, our systems

-15-

issues, etc. Mr. Clifford's advocacy activity had a much narrower focus.

Thus, the high scores assigned to Clifford during the initial screening process do little to show that Clifford possessed the current knowledge and experience required of applicants. Accordingly, Clifford has failed to show that SSA's disregard of these scores mandates an inference of discrimination.

### 3. Relative qualifications

Third, Clifford argues that he was more qualified than the selectees in many significant ways. This argument likewise proves unavailing. Even if Clifford was more qualified than the selectees in certain ways, SSA was entitled to assess each applicant and decide which applicant presented the best application as a whole. Although one applicant may have had impressive credentials in one specific area, he may have turned out to be deficient in another area. It was SSA's prerogative to hire the applicant who presented the best combination of skills. In the past, we have held that it is not the role of the court "to second-guess the business decisions of an employer, imposing our subjective judgments of which person would best fulfill the responsibilities of a certain job." Rossy v. Roche Prods., Inc., 880 F.2d 621, 625 (1st Cir. 1989).

In the comments of DuBois, we see that it was the hope of finding the well-rounded candidate that guided him during the selection process. After mentioning the particular deficiencies of

Clifford's application, cited above, DuBois goes on to state the following about Robert Clark, his selectee for the MPAS position:

> Mr. Clark, the selectee, has had primary responsibility for the public affairs program in the Portland service area for many years. He is an extraordinarily astute technician who was often called upon by his peers and by management as a technical resource for policy and systems issues. He is a former supervisor who brings the management point of view and flexibility to this position. In short, I considered him the perfect candidate.

In other words, Clark presented a combination of skills that was attractive to DuBois. Clark had technical ability, supervisory experience, and an extensive background in the subject area. Thus, the fact that Clifford may have excelled in certain areas is insufficient to compel us to find that he was entitled to the job, especially when there were other candidates such as Clark, who presented a more extensive set of credentials.

### 4. Biggers's explanations

In his fourth argument, Clifford focuses on the particular explanations proffered by Biggers as to why she did not select Clifford for the SIS position. He argues that she was inconsistent in a number of ways. First, he points to her testimony in her EEO Declaration and her deposition. In the former, she stated that Clifford did not have the requisite experience with current automated and programmatic systems. In the latter, however, when asked if she eliminated Clifford from consideration because of his lack of current knowledge and

-17-

experience, she replied, "Not true entirely. He was eliminated before we got to that point." As a result, Clifford states that Biggers was inconsistent in considering his knowledge and experience.

We, however, do not find any inconsistency. Although she had said in her EEO Declaration that Clifford did not have current knowledge and experience, she did not indicate that that particular deficiency was the decisive factor that eliminated him from her consideration. In her deposition testimony, she indicated that Clifford's lack of current knowledge and experience had nothing to do with her rejection of Clifford's application. She noted that Clifford had been eliminated from consideration before any consideration had been given to Clifford's current knowledge and experience.

Second, Clifford argues that Biggers "exalted form over substance" when considering his application. In making this argument, Clifford is referring to Biggers's statement that one of the reasons she did not select Clifford for the SIS position was the fact that his application was messy and filled with scatch-outs. Clifford contends that to Biggers, the appearance of the application -- in Clifford's eyes, a matter of "form" -- was an essential factor in selecting an employee, even more so than one's past experience working for SSA. He also argues that when

-18-

evaluating his "form," Biggers did not make any allowance for the fact that Clifford's disability affected his handwriting.

We reject both of these claims. Regarding Clifford's argument about Biggers elevating form over substance, we think that the appearance of one's application is as much about substance as form. The neat appearance of an application reflects the substantive ability of a potential employee to put his "best foot forward" on behalf of an organization. Clifford's other argument is likewise without merit. Clifford argues that "[a]lthough Biggers was aware of Clifford's disability, she did not make any accommodation for the fact that Clifford's disability affected his handwriting." We do not see, however, how Biggers could have made any such accommodation, as we can find no evidence that Biggers knew that Clifford had a disability that affected his handwriting in particular. See Estades-Negroni v. Assocs. Corp. of N. Am., 377 F.3d 58, 64 (1st Cir. 2004) (noting that "[a]n employer need not provide accommodations where it does not know an employee has a disability").

Third, Clifford contests Biggers's ability to accurately assess what experience was needed for the job, as she did not have the technical background necessary to properly assess applicants for the position. Regardless of whether Biggers did in fact have the technical background Clifford claims was required, she was the one assigned by SSA officials to evaluate the applicants for the

SIS position.  If she was in fact deficient in certain technical skills -- a proposition we are not at all certain of -- and she was unable to assess the applicants' respective technical abilities in the evaluation process, this was likely true of her evaluation of all applicants, and not just Clifford.  Thus, we fail to see how Clifford can prove discrimination by pointing to potential deficiencies in Biggers's background.

In his final iteration of this particular argument, Clifford contends that in Biggers's eyes, there was just one factor that distinguished him from the other applicants: his disability. He states that because he was the only one capable of meeting Biggers's avowed objective of hiring an applicant who could start on the job with little training, his non-selection was clearly the result of his disability.  Clifford, however, makes several erroneous assumptions in this argument.  Biggers was aware of many factors that distinguished Clifford from the other applicants.  For example, as discussed above, she took issue with the fact that Clifford's application was not presented as neatly as those of other applicants.  His application was messy and filled with scratch-outs.  She also found it difficult to follow Clifford's application with respect to his work history, as the dates were unclear.  Moreover, Biggers noted that during his interview, Clifford made inopportune comments about how he wanted SSA to re-hire him so that he could earn more credit toward his federal

retirement, as opposed to emphasizing what he had to offer the agency.

Clifford also makes an erroneous assumption in contending that he was the only applicant who was able to start on the job with little training. In fact, the two individuals that Biggers eventually selected for the SIS positions were clearly able to start work with minimal training, since, as the district court found, they both were current SSA employees with a working knowledge of current systems and procedures and both had recently performed the same type of duties that would be supervised as part of the SIS position. Given these erroneous assumptions, we decline Clifford's invitation to find in Biggers's actions an inference of discriminatory animus.

### 5. DuBois's explanations

In Clifford's fifth argument, he attacks not the explanations proffered by Biggers, but by DuBois. Specifically, Clifford focuses on two factors. First, he notes that DuBois stated that he did not select Clifford because of his lack of current knowledge and experience. Clifford argues that this could not have been DuBois's real reason, as Clifford had been rated "Superior" in his "Knowledge of SSA Policies and Procedures, Objectives, and Programs." Second, Clifford points to how DuBois had articulated in the past a desire to encourage disabled individuals to return to work by hiring them for positions with the

-21-

SSA and how DuBois did in fact demonstrate his commitment toward employing disabled workers. Clifford, however, states that DuBois's commitment was a limited one, as he only hired disabled workers for lower grade positions. Clifford argues that given his high scores and extensive previous work experience, DuBois's decision not to hire him demonstrates definitively that DuBois had an inherent bias toward hiring disabled people for higher grade positions at SSA.

We reject these arguments. First of all, as we discussed above, Clifford's scores are largely irrelevant for the purposes of this appeal. The scores were assigned by human resources officials solely for the purpose of compiling a "best qualified" list. DuBois could easily have found that despite his high scores Clifford did not have the current knowledge and experience required for the jobs for which he had applied.

Second, although DuBois did say that Clifford lacked current knowledge and experience, he also advanced another reason that Clifford was not hired -- namely, because the positions Clifford had applied for were only to be made available to current SSA employees. As the district court found, DuBois was "adamant" that Clifford should not have been included in the list of eligible people for either the MPAS or MSS position because DuBois only wanted these positions advertised internally. The fact that Clifford was not a current SSA employee was almost certainly the

decisive factor in DuBois's decision. That DuBois used such a criterion, however, does not demonstrate that DuBois had an inherent bias against hiring disabled people for higher-grade positions at SSA. DuBois, rather, had an inherent bias toward hiring non-current employees for the higher grade positions, whether applicants were disabled or not. DuBois himself stated in his EEO affidavit that he "never hired Grade 12 [GS-12, a high grade] from outside" SSA. He never said that such a limiting factor in his hiring decisions was limited to disabled individuals. Further, Clifford himself conceded on summary judgment that SSA "virtually always fills such higher grade positions through internal promotion" of current employees. Thus, as the district court correctly explained, SSA's preference for internal promotion of employees does not suggest that its hiring decisions were motivated by disability discrimination. See Clifford v. Comm'r, Soc. Sec. Admin., No. Civ. 03-193-B-W, 2005 WL 1532636, at *9 (D. Me. June 28, 2005) (noting that "[Clifford's] contention does nothing to demonstrate discriminatory animus toward Clifford based on his disability, only favoritism toward current employees"). Put another way, SSA discriminates, but it does so based on "current employee" status, not on disability. Accordingly, we find that Clifford's argument on this point has no merit.

## 6. Institutional bias

In his sixth, and final, argument, Clifford expands the second part of his previous argument, contending that not only DuBois, but also SSA as an organization, maintained an inherent bias against hiring disabled persons in the higher grade positions. According to Clifford, being labeled as "disabled" in such an environment stigmatized him and denied him the opportunity to freely and fairly compete for the higher grade positions.

Clifford, however, has not shown the truth of his threshold assumption -- namely, that SSA has an institutional bias against hiring disabled persons for higher grade positions. In support of his argument, Clifford cites to the statements of DuBois and Cathleen Allen, who worked as a Human Resources Specialist at SSA from 1998 to 2004. Allen stated that "99.9%" of hires or appointments to GS-11 or higher are "all internal merit promotions." DuBois similarly noted that he "never brought a higher grade person in off the street." As discussed above, however, such statements evidence not a bias against hiring disabled individuals for higher grade positions, but rather a bias against hiring for those positions people who were not current employees at SSA, whether disabled or not. Therefore, even if Clifford was set apart from the other candidates in the applicant pool as a result of his disability, it was not that infirmity that disqualified him for the jobs he sought. Rather, it was the fact

-24-

that he was not a current employee of SSA when he applied for those higher grade positions.  As a result, this claim fails as well.

## III.  Conclusion

For the reasons expressed herein, the decision of the district court granting summary judgment on behalf of SSA is

**<u>Affirmed</u>**.