## LIFE INSURANCE COMPANY OF NORTH AMERICA, Plaintiff– Stakeholder,

v.

Catherine REINHEIMER and Judith Reinheimer, Defendants.

Catherine Reinheimer, Plaintiff in cross-claim, Defendant in cross-claim,

v.

Judith Reinheimer, Defendant in cross-claim, Plaintiff in cross-claim.

Civil Action No. 06–10765–JLT.

United States District Court, D. Massachusetts.

July 31, 2007.

David B. Crevier, Katherine R. Parsons, Crevier & Ryan LLP, Springfield, MA, for Plaintiff–Stakeholder.

Peter G. Marino, Richardson & Tyler, Boston, MA, David S. Flashenburg, The Law Offices of David S. Flashenburg, Canton, MA, Elisabeth C. Kelly, Cambridge, MA, for Defendants.

## MEMORANDUM

JOSEPH L. TAURO, District Judge.

This case involves a dispute over the proceeds of a life insurance policy. The Life Insurance Company of North America ("LINA") initiated this matter through interpleader, and has since been dismissed from the case.

Catherine Reinheimer ("Catherine"), Defendant, Plaintiff in cross-claim, and De-

fendant in cross-claim, brings suit against Judith Reinheimer ("Judith"), Defendant, Defendant in cross-claim, and Plaintiff in cross-claim. She seeks a declaration that any and all rights Judith once had to the proceeds of Robert Reinheimer's life insurance policy terminated as of January 13, 2006, and that all proceeds of the life insurance policy should be paid to Catherine.

Judith brings suit against Catherine, alleging: (1) misrepresentation; (2) promissory estoppel; (3) undue influence, duress or unclean hands. Judith also seeks a declaration that she is the valid beneficiary of Robert Reinheimer's life insurance policy and that she is entitled to the proceeds.

Both Judith and Catherine move for summary judgment on all counts.

## Background

The following facts are undisputed by the parties. On April 17, 1966, Robert and Judith were married.[1] They had two children, Rachel Ellen and Jay Robert, who are now adults.[2] On April 30, 1998, they were divorced by Judgment of Divorce Nisi entered by the Probate and Family Court of Middlesex County, Massachusetts, incorporating the terms of a Separation Agreement ("Agreement") entered into by Robert and Judith on that same date.[3]

Under the Agreement, Robert, by virtue of his larger income, agreed to pay alimony to Judith in the amount of $650.00 per week,[4] and to designate her as the beneficiary of a life insurance policy in the amount of $200,000.[5] Either party could request that the amount of alimony be renegotiated in the future if there was a material and substantial change in their circumstances. And when Robert retired, he could reduce the amount of the life insurance policy to $100,000.[6]

On or about April 16, 1999, Robert married Catherine, and they remained married until Robert's death on January 19, 2006.

By October of 2003, Robert's health was failing.[7] He retired at age sixty-two, and converted his existing insurance policy issued through his employer to a term policy for $100,000.[8] The new policy, Individual Policy No. CWL2000 ("the policy") was issued by LINA, and listed Judith as the beneficiary.[9]

On April 1, 2004, Robert filed a Complaint for Modification of the Divorce order in the Middlesex Probate and Family Court, arguing that due to his health and loss of income, the divorce court should terminate alimony and life insurance coverage payments to Judith.[10] The Complaint was heard on April 14, 2005, and Robert and Judith reached an agreement that became a judgment of the court ("the Modification Agreement").[11]

1. Separation Agreement, Catherine's Table of Exs. (hereafter Catherine's Exs.), [33–2], 2.

2. *Id.*

3. Divorce J., Catherine's Exs., [33–2], 1.

4. Separation Agreement, Catherine's Exs., [33–2], 8.

5. *Id.* at 9.

6. *Id.* at 8.

7. Medical Record Excerpts and Dep. Excerpts, Catherine's Exs., [33–2], 53, 61.

8. Aff. of Att'y Kelly in Support of Judith's Mot. for Summ. J., [37], Ex. D, 1.

9. Judith's Concise Statement of Undisputed Facts, [36], 3; Aff. of Att'y. Kelly in Support of Judith's Mot. for Summ. J., [37], Ex. D, 1.

10. Compl. for Modification, Catherine's Exs., [33–2], 17.

11. *Id.* at 18.

The Modification Agreement reads as follows:

(1) The Plaintiff Robert Reinheimer shall continue to pay to Judith Reinheimer the sum of $325 per week until January 13, 2006.

(2) The Plaintiff shall continue to maintain his current life insurance policy with a beneficiary benefit of $100,000 *naming Judith Reinheimer as beneficiary until January 13, 2006.* At which time said life insurance policy or its equivalent shall stay in force and effect however at that time Robert Reinheimer shall have the right to name a beneficiary of his choice. If Judith Reinheimer secures an order for Robert Reinheimer to pay alimony in the future she should have the right to have the court to order Robert Reinheimer to name her as beneficiary on said life insurance policy. In any event the face value of said policy shall not exceed $100,000.00. Robert Reinheimer shall provide to Judith Reinheimer evidence that said policy is in force and effect once per year.[12]

On August 29, 2005, Robert completed a "change of beneficiary form" for the policy, naming Catherine as the new beneficiary,[13] in contravention of the Modification Agreement that only allowed him to change his beneficiary after January 13, 2006.[14]

In November of 2005, Robert entered the hospital, where he remained in intensive care until he died on January 19, 2006.[15] Shortly before his death, he communicated to Catherine that he had designated her as beneficiary for the policy, and that after a certain date, either January 13 or 15, 2006, Judith would no longer have an interest in the proceeds.[16] In December 2005, Catherine was named health proxy for Robert and, in that capacity, she made the decision to remove his life support on January 19, 2006.[17]

## Discussion

### A. Summary Judgment Standard

The court should enter Summary Judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[18] *"Some* alleged factual dispute" between the parties does not defeat an otherwise properly supported motion for summary judgment. Instead, the party opposing summary judgment must identify a *"genuine* issue of *material* fact." [19]

" '[G]enuine' means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.' " [20]

The party seeking summary judgment must show an absence of evidence to sup-

---

**12.** Modification J., Catherine's Exs., [33–2], 19–2 (emphasis added).

**13.** Designation of Beneficiary Form, Catherine's Exs., [33–2], 24.

**14.** Modification J., Catherine's Exs., [33–2], 19–20.

**15.** Robert Reinheimer Death Certificate, Catherine's Exs., [33–2], 25.

**16.** Dep. of Catherine Reinheimer, Catherine's Exs., [33–2], 36:1–14, 37:1–18.

**17.** *Id.* at 35: 15–21.

**18.** Fed.R.Civ.P. 56(c); *Mulloy v. Acushnet Co.,* 460 F.3d 141, 145 (1st Cir.2006).

**19.** *Mulloy,* 460 F.3d at 145 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (emphasis in original).

**20.** *Seaboard Sur. Co. v. Town of Greenfield,* 370 F.3d 215, 218–19 (1st Cir.2004).

port the nonmoving party's case.[21] "Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[22]

This court "must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor,"[23] but need not afford any weight to "conclusory allegations, improbable inferences, and unsupported speculation."[24] Summary judgment provides the necessary opportunity for a court " 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' "[25]

Though both parties have moved for summary judgment, the court must act on each motion in turn, drawing inferences in favor of the non-moving party, assessing the undisputed facts, and drawing conclusions as a matter of law.[26]

## B. Validity of Change of Beneficiary

At issue in this case is whether Robert's premature change of beneficiary (a contract between Robert and LINA) is void because it constituted a breach of the Modification Agreement, or instead whether Judith is entitled to the proceeds as an equitable matter. Judith argues that the premature change of beneficiary on August 29, 2005, was void as a matter of law, and that she had both an equitable and legal interest in the proceeds. Catherine counters that the premature change of beneficiary was an act that would have been voidable up to January 13, 2006, and that because it did not violate the terms of the Modification Agreement at the time of death, Judith has neither legal nor equitable interest in the proceeds. This court holds that the change of beneficiary is not void, but was merely voidable.

 A void contract is one that is without any legal effect, for example a contract whose terms are contrary to public policy. A voidable contract, on the other hand, is one that can either be avoided or ratified by one of the parties.[27] Examples of voidable contracts include a contract made with an infant, or a contract whose formation is tainted by fraud, mistake, or duress.[28] The inquiry to determine whether the contract is voidable or void requires a court to look at the conditions of contract formation.

[C]ourts typically ask whether the contract has been made under conditions that would justify giving one of

**21.** *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir.2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

**22.** *Id.* (quoting *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995)).

**23.** *Id.* (quoting *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000)).

**24.** *Santiago v. Feeney*, 379 F.Supp.2d 150, 154 (D.Mass.2005) (quoting *Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir.1999)).

**25.** *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir.2005) (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)).

**26.** *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir.2001).

**27.** *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 431–2, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (Breyer, J. concurring) (citing Restatement (Second) of Contracts § 7, cmt. a, b (1979); Restatement (Second) of Contracts, § 178).

**28.** Restatement (Second) of Contracts § 7, Comment b (2007).

the parties a choice as to validity, making it voidable, e.g. a contract with an infant, or whether enforcement of the contract would violate the law or public policy irrespective of the conditions in which the contract was formed, making it void, e.g. a contract to commit murder.[29]

Although the terms of the Modification Agreement obligated Robert to maintain Judith as beneficiary until January 13, 2006, his act in changing the beneficiary to Catherine did not have the effect of depriving Judith of anything to which she was entitled. Although this exact question of law has not been presented in this jurisdiction, Massachusetts law is clear that if Robert had died before January 13, 2006, Judith could have sought a remedy in the courts to have the proceeds awarded to her.[30] The change of beneficiary form granted Catherine a conditional legal interest in the policy, subject to defeasance until Robert died.[31] The change of beneficiary form was not a conveyance, transfer or disposal of the proceeds of the life insurance policy, since those proceeds are not acquired until the death of the insured.[32]

In this way, the change of beneficiary would clearly have been voidable had Robert died before January 13, 2006. But since Robert died after January 13, 2006, the document did not deprive Judith of her rights. Rather, it created a conditional interest for Catherine that was converted into a valid legal interest after January 13, 2006. Enforcing the premature change of beneficiary under the circumstances of Robert's death does not contravene the established public policy of enforcing divorce settlement agreements, but instead exercises Robert's conditional right under the Modification Agreement. Accordingly, the contract does not violate law or public policy, irrespective of the surrounding conditions. Whether the contract violated law depended on the date of Robert's death. As such, the change of beneficiary is better defined as voidable, rather than void.

Courts have held that where a decedent changes the beneficiary on a life insurance settlement in contravention of a divorce order, the original beneficiaries retain an equitable interest created by the consideration supporting the promise not to change designation.[33] But in this case the equities

---

**29.** *Oubre*, 522 U.S. at 431–2, 118 S.Ct. 838 (citations omitted).

**30.** *See Hurlbut v. Hurlbut*, 40 Mass.App.Ct. 521, 665 N.E.2d 1018, 1022 (1996) (awarding proceeds of a life insurance policy to a former wife where decedent had committed to maintain such benefits until age 60, but died at 49.)

Specifically, the court held, "[A] spouse who has been removed as a beneficiary of a life insurance policy in violation of the terms of a separation agreement is entitled to recover the proceeds of that policy." *Id.*

*See also Foster v. Hurley*, 444 Mass. 157, 826 N.E.2d 719, 724–25 (2005); *Green v. Green*, 13 Mass.App.Ct. 340, 433 N.E.2d 92, 94 (1982). These cases are distinguishable because in all of them, the decedent had continuing obligations at the time of death.

**31.** *See Strachan v. Prudential Ins. Co. of Am.*, 321 Mass. 507, 73 N.E.2d 840, 842 (1947) (describing the nature of the legal rights created by a life insurance beneficiary designation while honoring a decedent's change to his paramour, despite his representation to the insurance company that his paramour was his wife).

**32.** *See Gleed v. Noon*, 415 Mass. 498, 614 N.E.2d 676, 678 (1993) (explaining that because a designation is not a conveyance, defendant's change of beneficiary did not violate an Automatic Restraining order entered during a divorce proceeding which prohibited conveying, assigning, or encumbering assets).

**33.** *See Thomson v. Thomson*, 156 F.2d 581, 585 (8th Cir.1946) (quoting Appleman's Insurance Law and Practice, Vol. 2 Sec. 922, "Equities may be established in the first in-

do not favor Judith, the original beneficiary. In cases where courts held for the original beneficiary, such as *Green v. Green*, the decedent had ongoing obligations under the divorce settlement agreement at the time of death.[34] This is not the situation here. Accordingly, there is no Massachusetts case directly on point. Judith and Robert bargained for the termination of his obligations to her under the divorce decree, and their agreement called for Robert's obligations to cease on January 13, 2006. Allowing Judith to recover the proceeds of the life insurance policy when he died after that date would allow her to receive more than what she bargained for in the Modification Agreement, and she would be unjustly enriched.[35]

Support for this proposition exists in several other jurisdictions. In *Rodriguez v. Rodriguez*, the court held that where "the express language of the marital settlement agreement provided for alternative events that triggered the termination of the [decedent's] obligation, thereby removing the restriction on his right to substitute a beneficiary," the premature change was voidable and not invalid.[36] *Rodriguez* references prior cases in Alabama *(Whitten v. Whitten)*[37] and New Jersey *(Konczyk v. Konczyk )*[38] to support its logic. The courts in those cases examined the intent behind similar provisions in divorce decrees and determined that the provisions were not intended to vest an absolute right to the proceeds in the beneficiary, but instead that the insurance provisions served as security for alimony or support payments which could terminate under certain circumstances.[39]

Although Judith attempts to distinguish these cases by "the terms of the provisions at issue and/or the applicability to the

stance by a contract with the insured, particularly where the claimant's part has been fully performed. If sufficient consideration appears to support the insured's promise to make the claimant the beneficiary or not to change the designation so as to deprive the named beneficiary of his interest therein, the claimant takes a vested interest in the proceeds. And this is true regardless of the fact that the policy gives the insured the right to change the designation."); *see also Green,* 433 N.E.2d at 94.

**34.** *See Handrahan v. Moore,* 332 Mass. 300, 124 N.E.2d 808, 808 (1955) (explaining that the trustee of a life insurance policy under a pre-divorce agreement had an equitable interest in other policies when the deposited policy became worthless); *Hurlbut,* 665 N.E.2d at 1019–20; *Green,* 433 N.E.2d at 92.

**35.** *See Krapf v. Krapf,* 439 Mass. 97, 786 N.E.2d 318, 324 (2003) (finding that a husband was required to pay his former wife an amount equal to the military pension income she would have received under the parties' separation agreement if the husband had not waived benefits) (citing *Clark v. State St. Trust*

*Co.,* 270 Mass. 140, 169 N.E. 897 (1930) (holding that separation agreements should be construed in a manner that appears to be in accord with justice and common sense and the probable intention of the parties)).

**36.** 818 N.E.2d 993, 997 (Ind.App.2004).

**37.** *Whitten v. Whitten,* 592 So.2d 183, 186 (Ala.1991) (holding that a premature change of beneficiary was voidable where the father breached his obligation under the divorce decree to keep in effect a life insurance policy to benefit his minor son and where the father died several months after his son obtained the age of majority, and awarding the proceeds to the new beneficiary).

**38.** *Konczyk v. Konczyk,* 367 N.J.Super. 512, 843 A.2d 1167, 1168 (App.Div.2004) (holding that a premature change of beneficiary on a life insurance policy intended to secure a limited term alimony obligation was voidable, and awarding the proceeds to the new beneficiary).

**39.** *Whitten,* 592 So.2d at 186; *Rodriguez,* 818 N.E.2d at 997; *Konczyk,* 843 A.2d at 1168.

instant case," this is not persuasive.[40] Judith provides no specific reason why *Rodriguez* or *Konczyk* are distinguishable. She does argue that *Whitten* is distinguishable because it involves child support rather than an alimony provision, and because its holding is contrary to *Green*.[41] *Green*, as discussed above, however, is not on point because the decedent's obligation in that case did not terminate at or before the time of death.[42] And the conclusion that an action contrary to the terms of the separation agreement is void or voidable should not depend on whether the term relates to alimony or child support. The key facts used in the analysis of *Rodriguez*, *Konczyk* and *Whitten* are the language of the agreement and whether the key event or date had passed at the time of death.[43] In this way, these courts examined the same question presented here, whether a change made prematurely before the key event had effect after that event.

Because Robert's obligations under the modification agreement had terminated at the time of his death, the change of beneficiary form was voidable, not void. Accordingly, this court DENIES Judith's *Motion for Summary Judgment* [# 34], ALLOWS Catherine's *Motion for Summary Judgment* [# 32] and holds that Catherine is entitled to the proceeds of the life insurance policy.

## C. Misrepresentation, Promissory Estoppel, Undue Influence, Duress and/or Unclean Hands

■ Having resolved the issue of the validity of the change of beneficiary, the court now turns to the remaining claims in Judith's *Motion for Summary Judgment*—misrepresentation and promissory estoppel, and undue influence, duress or unclean hands. Judith asserts that Robert's premature change of beneficiary, coupled with Catherine's ability to manipulate the date of Robert's death as his health care proxy, was a material misrepresentation under the life insurance policy which warrants voiding the change.[44] But as previously explained, the change in beneficiary is only voidable. The possibility of manipulation is insufficient to reverse that conclusion.

Judith attempts to support her allegation regarding Catherine's potential for manipulation of the date of Robert's death with the affidavit of her daughter, Rachel Reinheimer Iarossi. This affidavit, which is the subject of Catherine's *Motion to Strike* [# 51], contains Rachel's declaration that Catherine attempted to interfere with Robert's obligation to provide Judith with life insurance benefits by maintaining Robert's life support until after January 13, 2006.[45] In support of this contention, Rachel notes that Catherine had a private meeting with Robert and his attorney in December 2005 or January 2006, that Catherine spoke about her money problems, and that Catherine began discussing

**40.** Judith's Mem. in Opp. To Catherine's Mot. for Summ. J., [38], 26.

**41.** *Id.*

**42.** *Green*, 433 N.E.2d at 92.

**43.** *Whitten*, 592 So.2d at 186; *Konczyk*, 843 A.2d at 1168.

**44.** Judith's Mem. in Opp. To Catherine's Mot. for Summ. J. [38], 17; *Foster*, 826 N.E.2d at

727 ("Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched.")

**45.** Aff. of Att'y. Kelly in Support of Judith's Mot. for Summ. J. [37], Ex. F, 1–2.

removing Robert's life support on January 14, 2006.

These facts simply do not give rise to a conclusion that anything untoward occurred. Catherine was Robert's health care proxy.[46] Rachel's affidavit and the rest of the record indicate that Catherine discussed the issue with family and medical personnel.[47] She tried to fulfill Robert's wish that he not suffer for a long period of time.[48] Rachel's affidavit, even if admissible, would amount only to unsupported speculation. There are no facts in the record that support the conclusion that Catherine acted in a manner that would move this court to use its equitable power to disturb the legal conclusion reached above that the change of beneficiary form was merely voidable. Accordingly, Catherine's *Motion to Strike* [# 51] is DENIED AS MOOT.

Judith also relies on *Unicare Life & Health Insurance Company v. Phanor* to support her assertions that Catherine and Robert's conduct warrants equitable relief.[49] Although this court awarded the proceeds of a life insurance policy to an ex-wife in *Unicare*, that holding does not provide support for Judith's assertions.[50] Rather, the facts of *Unicare* place it on all fours with *Green* and distinguish it from this case, since the decedent had continuing obligations to his ex-wife at the time of his death.[51] Here, the question is the scope and meaning of the divorce obligations, not whether the obligations are valid under the federal Employee Retirement Income Security Act.

 Judith alleges in her cross-claim that Catherine should be barred from seeking relief by virtue of her unclean hands. Judith alleges that since Robert knew the terms of the Modification Agreement, the only means for any change in beneficiary designation was through undue influence or duress exerted on him by Catherine. But Judith provides no facts to support this allegation in her motion for summary judgment or in her opposition to Catherine's motion for summary judgment. Rather, the facts show that Catherine only learned of Robert's action in changing the beneficiary in December 2005, more than four months after he completed the change of beneficiary form and submitted it to LINA.[52] Similarly, Judith alleges no facts to support her claims of promissory estoppel.

## Conclusion

Because the change of beneficiary was voidable, not void, and because no facts support disturbing this result, Judith's *Motion for Summary Judgment* [# 34] is DENIED, and Catherine's *Motion for Summary Judgment* [# 32] is ALLOWED. An order will issue.

---

**46.** Dep. of Catherine Reinheimer, Catherine's Exs., [33–2], 35:15–21.

**47.** Aff. of Att'y Kelly in Support of Judith's Mot. for Summ. J. [37], Ex. F, 3.

**48.** Aff. of Att'y Kelly in Support of Judith's Mot. for Summ. J. [37], Ex. F, 2.

**49.** *See* 472 F.Supp.2d 8 (D.Mass.2007) (holding that where no final determination is made about the life insurance policy in the divorce proceedings, an Automatic Restraining Order issued by the Massachusetts Probate and Family court is not preempted by ERISA).

**50.** *Id.* at 14.

**51.** *Id.* at 9.

**52.** Dep. of Catherine Reinheimer, Catherine's Exs. [33–2], 36:1–14, 37:1–18.